(47 App. Div. 289.)

HILTON & DODGE LUMBER CO. v. MURRAY et al.

(Supreme Court, Appellate Division, Second Department. January 9, 1900.)

1. MECHANICS' LIENS—FIXTURES.
    Where a landowner permitted others to erect buildings and a bicycle track for exhibition purposes on his land under an agreement by which he was to receive a part of the entrance fees for the use of the land, such buildings and track were realty, within the meaning of the mechanic's lien law; and hence the land was subject to a lien in favor of persons furnishing labor and materials in their construction, improvement, and repair, though the agreement under which they were erected permitted their removal.

2. SAME—PROPERTY JOINTLY LIABLE.
    Where a landowner and one who had erected buildings thereon for exhibition purposes, with the right of removal, under an agreement by which the landowner was to receive a part of the entrance fees, leased the property to a third party, who agreed to pay a part of the entrance fees

received therefrom, and to equip the property for such purposes at his expense by erecting a bicycle track with appurtenances, and to improve and repair the buildings thereon, and the landowner directed certain of the improvements, in which the owner of the buildings took no part, for the purposes named in the lease, the land and the buildings were jointly liable to lienors furnishing such labor and materials therefor in proportion to their respective value.

Appeal from special term.

Action by the Hilton & Dodge Lumber Company against J. Archibald Murray, Buffalo Bill's Wild West Company, and others. From a judgment in favor of plaintiff and certain defendants, defendant Murray appeals. Modified.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

J. Archibald Murray, in pro. per.

James A. C. Johnson and Joseph A. Burr, for respondent lumber company and other lienors.

S. Livingston Samuels, for respondent Buffalo Bill's Wild West Co.

PER CURIAM.[1] This action is to foreclose a mechanic's lien. The appellant, Murray, was the owner of a large tract of land in the city of Brooklyn, known as "Ambrose Park." In 1893 the appellant entered into an agreement with the defendant the Wild West Company by which the latter was given license to occupy the park for the purpose of giving exhibitions for a stipulated portion of the receipts, and was to have the right to remove all buildings and structures it might place on the premises. In December, 1897, a lease was executed by Mr. Murray of the first part, the Wild West Company of the second part, and the defendant William J. Morgan of the third part, which recited that the party of the first part was the owner of lands known as "Ambrose Park," and the party of the second part the owner of the buildings and other structures upon it. The instrument then proceeded to demise by the parties of the first and second parts to the party of the third part the tract of land known as "Ambrose Park," together with all the buildings and structures, for the term of one year, for the purpose of giving exhibitions; Morgan to pay as rent a stipulated proportion of the entrance fees to Murray, and another portion to the Wild West Company. The lease contained a covenant whereby Morgan agreed that he would cause the premises to be properly and sufficiently equipped, at his own expense, for use for the purpose of "different kinds of exhibitions, shows, and business," by erecting a bicycle track and its appurtenances, so as to be adequate to make a complete use of the entire premises demised. The only provision which we can find with reference to Morgan's right to remove the buildings is his covenant that, if required so to do by the parties of the first and second parts, he would, at the termination of his lease, remove any structures or

---

[1] This opinion was written by Mr. Justice CULLEN before his designation as an associate judge of the court of appeals, and is adopted by this court.

other property which he might have placed on the demised premises. Morgan entered into possession of the park, and proceeded to construct thereon a bicycle track, and also to repair and improve the buildings already on the lands. He became involved in financial difficulties, and liens were filed upon the property by the plaintiff and certain of the defendants, either material men or contractors. It is stipulated in the case that one Ambrose was the general agent of the appellant, Murray, for the management of the property. It appears by the evidence that Ambrose gave, not only assent, but directions, to have certain repairs made to the buildings, fences, and other structures on the property. Some of the liens filed include work and labor furnished, not only for the bicycle track, but also for the repairs to the other structures. The learned trial court held the land of the appellant, Murray, subject to the full amount of these liens, as to the bicycle track, on the ground that the lease expressly provided for its construction, and, as to the repairs to the other structures, because defendant's agent, Ambrose, had joined in the direction for them. The court decreed a sale of the property for the satisfaction of the liens, but provided that the sale should be made subject to the right of the Wild West Company to remove its buildings, thus practically relieving that defendant and its property from any liability. From the judgment the defendant Murray alone appealed.

Were this the ordinary case of constructions erected on land without any agreement for their removal, it is reasonably clear that the provisions of the lease and the action of the owner's agent would be sufficient to charge the land. Pell v. Baur, 133 N. Y. 377, 31 N. E. 224; Cowen v. Paddock, 137 N. Y. 188, 33 N. E. 154. The main contention of the appellant is based on the claim that the buildings and track, towards the construction or repair of which the work and labor represented by the liens were applied, were by the agreement between the parties personal property or mere chattels. We concede that for no work furnished on a mere chattel, strictly such, can any lien be acquired against the land upon which it is situated. But buildings or other similar structures placed by one party on the land of another, which the former has the right to remove, do not present the case of chattels pure and simple. In Mott v. Palmer, 1 N. Y. 564, a tenant had built a fence under an agreement with his landlord by which the former had the right to remove the material. The landlord subsequently conveyed the premises, with covenant of seisin. The tenant at the expiration of his term removed the fence. The purchaser sued the landlord for breach of his covenant, and a recovery was upheld. It was said by the court of appeals:

"The word 'land,' when used in a deed, includes, not only the naked earth, but everything within it, and the buildings, trees, fixtures, and fences upon it. * * * But the fence was within the description of the thing granted as clearly as the land itself, and, being within the description, it was a part of that which the deed purported to convey, and of which the grantor covenanted that he was the owner."

In Ombony v. Jones, 19 N. Y. 234, a tenant erected a ballroom on the demised premises, for work on which a lien was filed. Suit

was brought on the lien, judgment rendered, execution issued, and the building sold. It was there held that the tenant had the right of removal during his term, and that the purchaser succeeded to that right, which the tenant could not defeat by a fraudulent surrender to the landlord. But the case is not authority for the proposition that the building was merely a chattel. On the contrary, Judge Comstock says:

"The building now in question was, in its nature, real estate. Admitting that under the law of fixtures it could be removed by the tenant and placed in another situation, it would still be real estate, unless fixed in its new location under circumstances like those which justified the removal from its original site. There are in the books many examples of movable fixtures which become chattels the moment they are severed, and have none of the characteristics of land. That cannot be said in the present case. A building is, in its very nature, an annexation to land, and it becomes a chattel only by the application of some exceptional rule."

So it was held in Loughran v. Ross, 45 N. Y. 792, that if a tenant, having erected a building during his tenancy, which he has the right to remove, renews his lease without reserving the right to remove the buildings, he thereby loses such right. It was there said:

"A lease of lands and premises carries with it the buildings and fixtures on the premises, and the tenant accepting a lease of the premises without excepting the buildings takes a lease of the lands with the buildings and fixtures, and acknowledges the title of the landlord to both, and is estopped from controverting it."

The same rule was held in Talbot v. Cruger, 151 N. Y. 117, 45 N. E. 364. It will be seen, therefore, that the right given tenants to remove buildings does not make such buildings mere chattels. Had the appellant conveyed the land when the buildings were standing upon it, the outstanding right in the Wild West Company to remove those buildings would have been a breach of the covenants given on such conveyance; and, had he owned both buildings and land, he could not have reserved the buildings by parol. Noble v. Bosworth, 19 Pick. 314. We are of opinion, therefore, that under the mechanic's lien law buildings must be considered as real estate, regardless of any agreement with the owner of the land as to the right of removal, and that one who furnishes labor or material for their construction or repair may acquire a lien for his claim upon the land itself under the same circumstances which would subject the land to that lien provided no agreement for the removal of the buildings existed.

We now reach the question as to the respective liabilities of Murray, the owner of the land, and the Wild West Company, the owner of the buildings. It may very well be that a sale of the land under the decree in this action will result in a surplus, and to that surplus Murray is entitled. The provision in the decree that the sale shall be subject to the right of the Wild West Company to remove its buildings will diminish the amount to be realized on the sale by the value of those buildings. Hence the appellant is interested in reversing so much of the decree as provides for this reservation on the sale. While it is recited in the lease to Morgan that Murray is the owner of the land, and the company the owner of the buildings,

still there is but a single joint demise of both parties, and that demise of the land and buildings together as a piece of real estate. If the appellant's property is to be held liable for the work done on the cycle track because of the provision in the lease, we do not see why that of the Wild West Company should not also be subjected to liability for the same reason. It is to be said of both these parties that they were interested in the construction of this track and the improvements placed on the land, for the rentals which they were to obtain depended on the amount of the receipts from the exhibitions to be held on the grounds. There is no evidence that the company or any of its officers took personal part in the repairs on the buildings which were made by the tenant, Morgan, but the lease contained a provision that the premises should be properly equipped by the tenant for the purposes of the exhibitions to be held thereon. If the repairs made by Morgan, and the subject of these liens, were requisite to properly equip the grounds, the Wild West Company was liable for such liens as well as the appellant. The question of the extent of the respective liabilities of the appellant and the Wild West Company, or rather of their properties, is difficult to determine under any circumstances, and impossible for us to adjust on this record. We think the true rule is to hold these parties, as between themselves, liable proportionately to their respective property interests; that is to say, the value of the buildings, the value of the land. We have no evidence of what those values are.

The proper way to dispose of this appeal is to reverse so much of the decree as directs that the sale shall be subject to the right of the Wild West Company to remove the buildings, and modify the judgment so that the right be reserved by the judgment to either the company or the appellant to apply to the court at special term to hear and determine the amounts of their respective liabilities. As thus modified the judgment should be affirmed, with costs to the plaintiff and to the Yellow Pine Company, respondents, and to the appellant as against the respondent the Wild West Company.