TINSLEY v. SMITH et al.

(Supreme Court, Appellate Division, Second Department.   November 28, 1906.)

MECHANICS' LIENS—CONSENT OF OWNER TO WORK. •

    The owner of buildings, by giving a lease thereof in which the lessee
    covenants that he will "keep during the term * * * all the machinery
    and boilers in good working order" at his own cost, "consents" to work
    done by a third person under contract with the lessee for the purpose of

putting and keeping the machinery in working order, within Laws 1897, p. 516, c. 418, § 3, providing that a contractor who furnishes labor or material for the improvement of real estate with the consent of the owner shall have a lien.

Appeal from Trial Term, Kings County.

Action by Ada V. Tinsley against James A. Smith and others. From a judgment for plaintiff, defendant Patrick Skelly appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, HOOKER, RICH, and MILLER, JJ.

Martin Paskus (Arthur B. Hyman, on the brief), for appellants.
Amos H. Stephens (Frank C. Baker, on the brief), for respondent.

MILLER, J.   This action is brought to foreclose a mechanic's lien, and from the judgment decreeing a foreclosure of the lien and a sale of the premises affected by it the defendant Skelly, the owner of the premises, appeals.

The lien is asserted for labor performed and materials furnished in the repair of an ice plant pursuant to a contract with the defendant Smith, who was a lessee in possession of the premises; and it is claimed that such labor was performed and such materials furnished with the consent of the appellant, within the meaning of section 3 of the lien law (Laws 1897, p. 516, c. 418). It is claimed by the appellant that the machinery upon which the labor was performed and for which said materials were furnished was not so affixed to the realty as to be a part thereof; but it is so plain, from the use made of the property and from its description in the lease from the defendant Skelly to the defendant Smith, that the parties considered and treated said machinery as a part of the realty, that this question requires no extended discussion.

A serious question is presented, however, by the claim of the appellant that the finding that he consented to the repairs being made is unsupported by the evidence. The only evidence bearing upon the question independently of the lease itself is the testimony of one witness to the effect that the defendant Skelly was present at one time when certain work was being done on the engine, and that upon his attention being called to it he remarked that it was not necessary; but this tends to negative, rather than to support, the claim of consent. The lease contained a provision that no alteration of the premises should be made without the written consent of the owner. It also contained the following provision respecting repairs, viz.:

"And the said party of the second part further covenants and agrees to use said rented premises only for lawful purposes and keep the premises in good repair for the full term of this lease at his own cost and expense, and also that he will keep during the term of this lease all the machinery and boilers in good working order at his own cost and expense, and at the end of the term leave said machinery, boilers, and buildings in as good condition as reasonable wear and tear will allow."

The statute under consideration has frequently been construed, and the meaning of the phrase "with the consent of the owner" is now pretty well settled. The requirements of the statute are stated by Judge Martin, speaking for the court, in Hankinson v. Vantine, 152 N. Y. 20–29, 46 N. E. 292, 294, as follows:

"Thus it seems that the requirements of this statute as to consent are not met by a mere general agreement to the effect that a third person may, at his own expense, make alterations in a building occupied by him. The statute requires more. It requires either that the owner shall expressly consent to the particular alteration made, or that, with a knowledge of the particular object for which they are employed, he acquiesces in the means adopted for that purpose."

Judge Cullen, speaking for the court in Rice v. Culver, 172 N. Y. 60–65, 64 N. E. 761, 762, said:

"There is a marked distinction between the passive acquiescence of an owner in that he knows the improvements are being made, improvements which in many cases he has no right to prevent, and his actual and express consent or requirement that the improvement shall be made. It is the latter that constitutes the consent mentioned in the statute. To fall within that provision the owner must either be an affirmative factor in procuring the improvement to be made, or, having possession and control of the premises, assent to the improvement in the expectation that he will reap the benefit of it."

Where the tenant covenants to make specific improvements or repairs, the landlord has been held to have consented thereto within the meaning of the statute. Burkitt v. Harper, 79 N. Y. 273; Otis v. Dodd, 90 N. Y. 336; Jones v. Menke, 168 N. Y. 61, 60 N. E. 1053; Hilton & Dodge Lumber Co. v. Murray, 47 App. Div. 289, 62 N. Y. Supp. 35. For construction of similar provisions in contracts for the sale of lands, see Schmalz v. Mead, 125 N. Y. 188, 26 N. E. 251; Miller v. Mead, 127 N. Y. 544, 28 N. E. 387, 13 L. R. A. 701. But a consent to other alterations than those specified in the covenant will not be implied. DeKlyn v. Gould, 165 N. Y. 285, 59 N. E. 95, 80 Am. St. Rep. 719. While the consent may be implied from the owner's conduct and attitude in respect to the improvements, "the facts from which the inference of a consent is to be drawn must be such as to indicate at least a willingness on the part of the owner to have the improvements made, or an acquiescence in the means adopted for that purpose, with knowledge of the object for which they are employed." Cowen v. Paddock, 137 N. Y. 188, 33 N. E. 154; National Wall Paper Co. v. Sire, 163 N. Y. 122, 57 N. E. 293. And it is incumbent upon the person furnishing the labor or materials to inquire and assure himself of the facts, if he relies upon asserting a statutory lien. Spruck v. McRoberts, 139 N. Y. 193, 34 N. E. 896.

With these rules in mind, we are to examine the covenant in ques tion to ascertain whether the statutory consent can be implied from it. The appellant asserts that the covenant adds nothing to the tenant's common-law obligation to make repairs, and cites Suydam v. Jackson, 54 N. Y. 450, as authority for the proposition that the tenant is bound to make repairs; but, if it is meant by the expression used that the tenant is obliged to make good the ordinary deterioration of the property either from use or the elements, I do not understand the case cited to be authority for the proposition. The question decided by that case related to the construction of chapter 345, p. 592, of the Laws of 1860, and it was held that the destruction or injury which would relieve the tenant from the obligation of paying rent under that statute must result from some sudden or unexpected action of the elements or other cause, and not from gradual deterioration and decay, and I think it

clear, from the opinion of the learned judge who wrote in that case, that when speaking of the common-law obligation of the tenant to repair he had reference only to his duty to refrain from committing waste either by some affirmative act or by permissive negligence. This is made reasonably clear from his quotation from Comyn on Landlord and Tenant, and from the illustrations which he uses to show that the tenant is obliged to make such ordinary repairs as are necessary to prevent injury; and, while the general expression that the tenant is bound to repair is frequently used by text-writers and in adjudicated cases, so far as my research has enabled me to ascertain, it has so been used either when speaking of the tenant's duty to refrain from committing a waste or in reference to the tenant's duty to pay rent, notwithstanding the premises become out of repair. In other words, at common law there was no implied covenant of the landlord to repair, the tenant was not excused from paying rent even though the premises were destroyed or became untenantable, and if he wished the premises repaired he had to make such repairs; but the only implied covenant of the tenant was that he would so use the premises as not to commit waste. He was not bound by implied covenant to repair generally. See U. S. v. Bostwick, 94 U. S. 53, 24 L. Ed. 65.

We think that the covenant under consideration imposed a greater obligation on the tenant than he would have been under had it been omitted from the lease. He covenanted to "keep the premises in good order," to "keep all the machinery and boilers in good working order," and to "leave said machinery, boilers, and buildings in as good condition as reasonable wear and tear will allow." It will be noted that the phrase last quoted differs somewhat from the ordinary covenant that the tenant will surrender the premises in as good condition as they were at the commencement of the term, necessary use and damage excepted. A covenant to keep in good repair has been held to obligate the tenant to put the premises in good repair if they were not so at the commencement of the term. Payne v. Haine, 16 Mees. & Wels. 541; Green v. Eden, 2 T. & C. 582. A covenant to make "necessary repairs" was construed in the case of White v. Albany Ry., 17 Hun (N. Y.) 98, to refer only to such repairs as the tenant might find necessary for his use of the premises, and not to require the tenant to put the premises in better condition than they were at the commencement of the term. That case, however, did not attempt to disapprove of the case of Green v. Eden, supra, and the case of Payne v. Haine, supra, is cited with approval in Meyers v. Burns, 35 N. Y. 269, upon the proposition that it is the landlord's duty to repair defects existing at the commencement of the term under a covenant to keep the premises in repair; and in Lockrow v. Horgan, 58 N. Y. 635, a covenant of the tenant to make necessary repairs and to keep the premises in tenantable order was held to require him to repair an untenantable condition occurring after the commencement of the term, but owing to original defective construction, and it was held that the general surrender clause, requiring the premises to be surrendered in as good condition as at the commencement of the term, reasonable use and wear

101 N.Y.S.—25

and damages by the elements excepted, did not restrict the covenant to make necessary repairs.

We think, in the light of the cases cited, that, giving a fair interpretation to the covenant in question, the tenant was required to put the "machinery and boilers in good working order" and to keep them so during the term. The appellant, Skelly, must therefore be deemed to have consented, within the meaning of the statute, to such repairs as were reasonable and necessary to put and keep the machinery and boilers in good working order. There is no proof that the boilers and machinery were out of repair, nor is there anything in the record tending to show the nature of the repairs made. However, the appellant does not raise this point, but, on the contrary, insists that the repairs made were such ordinary repairs as the tenant was obliged to make at common law. Such being his contention, we are bound to assume that the repairs made were such as the landlord required the tenant to make by the provision in the lease quoted supra, and for the reasons hereinbefore stated he must be deemed to have consented thereto.

The judgment should be affirmed, with costs. All concur.

