McNULTY BROTHERS, Plaintiff, *v.* CARSTEN H. OFFERMAN et al., Appellants and Respondents, CROSS, AUSTIN & IRELAND LUMBER COMPANY et al., Respondents and Appellants, and GEORGE WEIDERMAN ELECTRIC COMPANY, Respondent.

Mechanics' liens — agreement by landlord to contribute specified sum of cost of improvements being made to leased premises by tenant thereof — failure of tenant to comply with lease and conditions of agreement — extent to which landlord is liable upon mechanics' liens for work done in compliance with agreement.

1. Tenants in common, lessor and lessee, vendor and purchaser, all have interests in the land; but when once they have given their consent to an improvement they cannot by any arrangement among themselves cut off the rights of lienors.

2. The owners of certain real property leased it for a term of years to a tenant who desired improvements made, for which purpose the owners agreed to contribute a sum named conditioned upon payment of the rent and upon certain improvements being made as therein set forth. The tenant did not comply with the terms of this agreement and failing to pay the rent was dispossessed and the owners put to heavy loss in completing the improvements. This litigation involves the adjustment of the claims of lienors who sup-

plied material to the tenant. *Held, first,* that the tenant in making these improvements was not a contractor within the meaning of the Lien Law (Lien Law, §§ 2, 3, 4; Consol. Laws, ch. 33). *Second,* so far as the liens are confined to work called for by the lease, they were properly allowed. Within those limits the landlords' estate may be charged to the same extent as if the owners of that estate had ordered the work themselves. In substance, they have made the lessee their agent for that purpose. *Third,* so far as the material was used in alterations not called for by the lease, the liens have been properly rejected.

*McNulty Brothers* v. *Offerman,* 164 App. Div. 949, affirmed.

(Argued May 22, 1917; decided June 5, 1917.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered November 10, 1914, modifying and affirming as modified a judgment of Special Term in an action to foreclose mechanics' liens.

· The facts, so far as material, are stated in the opinion,

*William H. Hamilton* and *Norman C. Conklin* for Carsten H. Offerman et al., appellants and respondents. It was error to sustain a lien against the owner when the only alleged consent was the $15,000 conditional contract in the lease, and no money ever became due to Leininger, the principal contractor. (*Van Clief* v. *Van Vechten,* 130 N. Y. 577; *Butler* v. *Aquehonga Land Co.,* 86 App. Div. 439; *Larkin* v. *McMullin,* 120 N. Y. 206; *Johnson·Service Co.* v. *Hildebrand,* 149 App. Div. 680; *Smith* v. *Sheltering Arms,* 89 Hun, 70; *Wood Co.* v. *Clark & Sons Co.,* 31 App. Div. 356; *Wexler* v. *Rust,* 144 App. Div. 296; *Hollister* v. *Mott,* 132 N. Y. 18; *Brainard* v. *County of Kings,* 155 N. Y. 538; *Maneely* v. *City of New York,* 119 App. Div. 390.) There was no consent under section 3 of the Lien Law, independent of the conditions and limitations imposed by the lease and section 4 of the Lien Law; and the general covenants in the lease are no consent. (*Hankinson* v. *Vantine,* 152

N. Y. 20; *Butler* v. *Aquehonga Land Co.,* 86 App. Div. 439; *La Pasta* v. *Weil,* 20 Misc. Rep. 555; *Regan* v. *Borst,* 11 Misc. Rep. 92; *Bertholf* v. *O'Reilly,* 74 N. Y. 513; *Schummer* v. *Clark,* 107 App. Div. 209; *De Klyn* v. *Simpson,* 34 App. Div. 436; 165 N. Y. 282; *McLean* v. *Sanford,* 26 App. Div. 603; *Marsh* v. *Thompson Realty Co.,* 174 App. Div. 218; *Sager* v. *Renwick P. & T. Assn.,* 172 App. Div. 359; *Vosseler* v. *Slater,* 25 App. Div. 368.)

*Robert H. Wilson* for Cross, Austin & Ireland Lumber Company et al., respondents and appellants. The material parts of the lease show the consent of the owners. (*McNulty* v. *Offerman,* 141 App. Div. 730.) The lease was a consent to the alterations and improvements therein specified. (*Jones* v. *Menke,* 168 N. Y. 61; *De Klyn* v. *Gould,* 165 N. Y. 282; *Rice* v. *Culver,* 172 N. Y. 60; *Nat. W. P. Co.* v. *Sire,* 163 N. Y. 122; *Barnard* v. *Adorjan,* 116 App. Div. 535; *Tinsley* v. *Smith,* 115 App. Div. 708; 194 N. Y. 581; *Steeves* v. *Sinclair,* 56 App. Div. 448.) The provision of the lease that the owners were to contribute $15,000 toward these alterations did not limit the amount which the lienors are entitled to recover. (*Steeves* v. *Sinclair,* 56 App. Div. 448; *Schmalz* v. *Mead,* 125 N. Y. 188; *Mosher* v. *Lewis,* 94 App. Div. 565; *National Wall Paper Co.* v. *Sire,* 163 N. Y. 122; *De Klyn* v. *Gould,* 165 N. Y. 282; *McNulty* v. *Offerman,* 141 App. Div. 730.) The covenant in the lease under which these alterations were made was not a separate contract and was never understood or intended so to be. (*McNulty* v. *Offerman,* 152 App. Div. 181.)

*Woolsey A. Shepard* for Weiderman Electric Company, respondent. The owners consented to the doing of the work and the furnishing of the materials by this respondent within the meaning of section 3 of the Lien Law (Laws of 1909, ch. 38, § 3; Cons. Laws, ch. 33), and their

property is, therefore, properly chargeable with the lien. (*Schmalz* v. *Mead*, 125 N. Y. 188; *Nat. Wall Paper Co.* v. *Sire*, 163 N. Y. 122; *Jones* v. *Menke*, 168 N. Y. 61.)

Cardozo, J. On April 26, 1907, the defendants Offerman and others, who will be described as the owners, leased to one Ralph Leininger real property in Brooklyn for a term of ten years at rentals ranging from $53,500 to $74,000 a year. The building had been used for a department store, and that was the use which was to be continued by the tenant. The owners did not desire any alterations. The tenant thought, however, that alterations would be helpful to himself. Various plans were discussed. Some of them involved the payment of $60,000 or even more. The owners finally agreed to contribute $15,000. They exacted no specifications; they received no estimates; they did not know or care whether the cost to the tenant would be $15,000 or $20,000 or $100,000; this they expressly admit; all that they undertook to do was to contribute $15,000 to the cost, whatever it might be. The contribution was burdened, however, with conditions. The covenant and the accompanying conditions are stated in the lease as follows:

"The party of the second part [the tenant] further covenants and agrees that for the sum of Fifteen Thousand Dollars ($15,000) to be paid to him by the parties of the first part, subject, however, to the conditions as hereinafter provided, he will during the first six months of the term make the following improvements and repairs in and to the building known as Nos. 503 to 513 Fulton Street and Nos. 234 to 248 Duffield Street, same to be done in a good and workmanlike manner in all respects, under the supervision of a competent architect, to be approved by the parties of the first part, viz: new maple wood flooring on the first floor and basement; appropriate balcony, extending around the walls on the first floor, and divided into suitable rooms; a connection with the subway sta-

tion from the basement, if permit for the same can be obtained; bringing the second and third floors out even with the Fulton Street front of the building; a new cloak and suit room with retiring room for ladies on the second floor; all show windows changed and improved; kalsomining or painting all walls and ceilings; painting all woodwork, inside and outside, including all pillars; cleaning entire fronts of building; repairing roof and placing elevators and all plumbing in good condition throughout; it being understood and agreed that said Fifteen Thousand Dollars ($15,000) shall be paid as follows, and only upon the following conditions, viz: (1) That the party of the second part has theretofore paid all installments of rents as they became due hereunder, and faithfully kept and performed all the other terms and conditions hereof for the period of at least nine months; and (2) that there be produced to the parties of the first part a certificate of the architect showing that all said improvements and repairs have been done and performed in a good and workmanlike manner and within the period above specified, and that all the cost and expense thereof has been actually paid and satisfied by the party of the second part, together with proof by search and certificate of the Clerk of Kings County, showing that no liens for any work or materials employed in connection with said improvements and repairs have been filed against the premises or any part thereof and remain unsatisfied; it being understood that the parties of the first part may (but only at their election, however) out of said Fifteen Thousand Dollars ($15,000) or any part thereof, and on account of the same pay off and discharge any lien or alleged lien that may be so filed. All improvements and repairs to the buildings shall belong to the parties of the first part as soon as made."

The tenant did not complete the improvements in the manner called for by the lease. He did not make a connection with the subway; he did not bring out the second

and third floors even with the Fulton street front; he did not construct a new cloak and suit room; he failed in other ways to live up to his contract, and his omissions were willful and substantial. He also made many alterations which his contract did not mention. Finally, he failed to pay the rent falling due on September 1, 1907. He was dispossessed, and the owners were put to heavy loss in restoring the dismantled building and completing the improvements. All these facts are found.

This litigation involves the adjustment of the claims of lienors who supplied material to the tenant. So far as the material was used in alterations not called for by the lease, the liens have been rejected. So far as it was applied to alterations called for by the lease, the liens have been allowed. The Cross, Austin & Ireland Lumber Company supplied lumber of the value of $5,871.95. Most of this, $4,143.41 in value, went into authorized improvements. The lien has been limited accordingly. Robert T. McMurray and Brother supplied steel and iron. The part which went into the authorized improvements was worth $5,185.27; the indebtedness was reduced by payments to $2,935.27; and to this the lien has been restricted. The Weiderman Electric Company made changes in the electric wiring under orders of the New York Board of Fire Underwriters. The owners did not object, but encouraged the tenant to proceed. The changes were necessary incidents of the improvements. Their value, $922.16, has been made the limit of the lien. Every dollar awarded to lienors represents an equivalent contribution to the value of improvements exacted by the lease.

The owners take the position that the tenant was a contractor; that his pay was conditioned upon his completion of the improvements, and upon his fulfillment for nine months of all the covenants of the lease; and that his failure to live up to his contract defeats the liens of materialmen or subcontractors. Section 2 of the Lien

Law (Consol. Laws, ch. 33) says: " The term ' contractor,' when used in this chapter, means a person who enters into a contract with the owner of real property for the improvement thereof." Section 4 says: " If labor is performed for, or materials furnished to, a contractor or subcontractor for an improvement, the lien shall not be for a sum greater than the sum earned and unpaid on the contract at the time of filing the notice of lien, and any sum subsequently earned thereon." The lienors take the position that restrictions applicable to those dealing with a contractor do not fit the situation. They say that landlord and tenant are alike owners, though of different estates or interests (Lien Law, § 2), and that when the landlord consents to improvements by the tenant, the relation which arises is that of joint proprietors rather than principal and contractor. They say that a lien is given to one " who performs labor or furnishes materials for the improvement of real property with the consent or at the request of the owner thereof " (Lien Law, § 3); and they find in the covenants of this lease a consent which charges a lien upon every interest in the land. If the tenant is in the position of a contractor, and materialmen are merely subrogated to his rights, his default destroys the liens (Lien Law, § 4; *Van Clief* v. *Van Vechten*, 130 N. Y. 571). If the liens depend upon the consent of joint proprietors to the improvement of the joint property, or at least upon some kindred principle, they have been properly established and properly enforced.

We think the tenant in making these improvements was not a contractor within the meaning of the Lien Law (*Dougherty-Moss Lumber Company* v. *Churchill*, 114 Mo. App. 578, 587). In the widest sense, any one who makes a contract is to that extent a contractor. But the word, as used in this statute, must receive a narrower meaning. A tenant covenants to make improvements, and to make them at his own expense. The landlord does

not owe him anything. We have held, none the less, that the landlord's estate may be subjected to a lien (*Jones* v. *Menke*, 168 N. Y. 61, 64). If the tenant were viewed as a contractor, this result would be impossible. The owners are, therefore, driven to the position that a landlord who is not to pay anything is bound, but a landlord who has undertaken to contribute to the cost goes free. That is not a reasonable outcome. The contractor whom the Lien Law has in view is one who would be so characterized in the common speech of men. He is one who, in the usual course of trade, has undertaken to improve the property of another. If he happens to have some interest in the land himself, his interest is an accident, and not the source and origin and occasion of his action. That is not the position of a tenant who as an incident to his tenancy, either at his own expense or with contributions from the landlord, has covenanted for betterments. His position does not differ in essence from that of a tenant in common who has improved the common property upon a promise by his co-tenant of equitable reimbursement. The statute, when it speaks of contractors, intends to reach another class. Joint proprietors, improving their joint estate, may contract between themselves as they please for the division or apportionment of expense, but their relation to materialmen and laborers remains unchanged. In their relation to lienors they remain owners and not contractors. When we speak of joint proprietors, we use the word in the largest sense. Tenants in common, lessor and lessee, vendor and purchaser, all have interests in the land; but when once they have given their consent to an improvement, they cannot by any arrangement among themselves cut off the rights of lienors (*Miller* v. *Mead*, 127 N. Y. 544, 548; *Wahle, Phillips Co.* v. *German Theatre, Inc.*, 153 App. Div. 17; 214 N. Y. 684). The consent once given, the lien attaches under the law.

We do not suggest that the landlord who consents to

one improvement may be charged with a lien when the lessee constructs another (*De Klyn* v. *Gould*, 165 N. Y. 282). The subject-matter of the work must be kept within the lines of the consent. In the case before us the liens have been confined to work called for by the lease. Within those limits the landlords' estate may be charged to the same extent as if the owners of that estate had ordered the work themselves. In substance, they have made the lessee their agent for that purpose (*Dougherty-Moss Lumber Co.* v. *Churchill, supra*). If they had given the order themselves, a materialman, who kept his contract, would have a lien though the building as a whole was never finished. His rights are no less where the owners give their orders through the medium of another. *N. Y. El. Supply & R. Co.* v. *Bremer* (74 App. Div. 400; 175 N. Y. 520) holds nothing to the contrary. There it was the lienor himself who elected to renounce performance. Here the performance by the lienors was substantially, if not in every instance literally, complete. The omissions would doubtless have been supplied if the owners had recognized the validity of the liens.

The question is, therefore, in its essence a question of intention: did the parties intend to assume the relation of owner and contractor as those terms are usually understood, or did they intend to assume the relation of joint proprietors? Their intention is, of course, to be gathered not so much from what they have styled themselves as from the verities of the situation. None of the indicia that mark the usual relation between owner and contractor are here. There was only the most general description of the improvements. There were no specifications controlling the manner of performance. There was neither estimate of the cost, nor inquiry nor concern about it. There was merely a promise to contribute a lump sum to an indefinite and unknown venture. But the conditions which went with the promise emphasize its purpose. The tenant was not only to complete the

work to the satisfaction of the landlords' architect; he was also to pay the rent and fulfill the other covenants of his lease for not less than nine months. In point of fact, he did not pay the rent. Even if he had completed the improvements, he would not have earned his compensation. That in itself is strong evidence that we are not to rank him as a contractor. It was not the performance of a building contract, but the performance of the covenants of a lease which conditioned his right. The term of performance was fixed at nine months. If the owners' position is right, it might as well have been ten years. The landlords in that view could have taken the benefit of the improvements and cut off the rights of lienors if at the end of the entire term a single covenant had been broken. The spirit and purpose of the Lien Law are at war with that conclusion (*Schmalz* v. *Mead*, 125 N. Y. 188, 193).

Other objections to the liens have been urged by counsel for the owners. They have not been overlooked, but have been found to be untenable.

There is also an appeal by the Cross, Austin & Ireland Lumber Company and Robert T. McMurray and Brother. Complaint is made by them that the amount of their liens has been unduly restricted. Their objections have been considered, but cannot be sustained.

The judgment should be affirmed, without costs, except to the defendant George Weiderman Electric Company, and to that defendant costs are awarded against the owners.

Hiscock, Ch. J., Collin, Cuddeback, Hogan, McLaughlin and Andrews, JJ., concur.

Judgment affirmed.