THE JEWETT REFRIGERATOR COMPANY, Plaintiff, *v.* DAVID LAWLESS
and Others, Defendants.

Supreme Court, Monroe County, March, 1923.

**Liens — foreclosure of mechanics' liens — landlord and tenant — when owner of property cannot be held responsible for alterations and repairs made by tenant.**

A more general consent or requirement on the part of the owner that the lessee may or shall at his own expense make alterations and repairs to the premises does not constitute a consent within the meaning of the Lien Law.

A lease provided: " That it will, at its own expense, make all additions to, alterations of and changes in the demised premises which may be necessary for the conduct of its business thereon, but no such changes, additions or alterations shall be made without the previous written consent and approval of the lessors, and all such additions and improvements which may be so made shall become and be the property of the lessors." There is no proof that the owners of the property consented to the work in writing nor that the work done or material furnished by the lienors benefited or added to the value of the property. The additions and alterations were the usual temporary changes made by a tenant for the purposes of trade and were in fact trade fixtures. The owners were not in possession or in control of the property and they were not affirmative factors in procuring the improvements. *Held*, that in determining the meaning of the clause in the lease in question regard must be had to the clear intent of the parties rather than to any particular words used in expressing their intent; that the tenant had the privilege of making changes, additions and alterations at his discretion and that the owners had no obligations or any affirmative rights in regard to the same; that the clause is a qualifying condition and not a covenant; that the liens filed for services rendered and materials furnished for additions and changes under the clause of the lease are void and ordered discharged.

A general covenant by the tenant to repair does not constitute the consent on the part of the landlord required by the Lien Law.

Another clause of the lease provided that the tenant would keep the premises in good condition and repair and would surrender them at the end of the term in as good condition as when taken, reasonable use and wear excepted. It is claimed that certain of the liens, in part, are for work and materials furnished in making repairs. There is no testimony that the owners of the property knew of the work or of the need for the repairs. *Held*, that the owners cannot be held responsible for incidental and trivial repairs to their property rendered by the order and on the credit of the tenant, and the liens for repairs will be disallowed.

ACTION to foreclose mechanics' liens.

*John Van Voorhis' Sons*, for plaintiff.

*Hubbell, Taylor, Goodwin & Moser*, for defendants David Lawless and Michael Lawless.

*Joseph P. Hogan*, for defendant Martin Moll, as trustee for the Itta Company, bankrupt.

*Heiby W. Ungerer*, for defendant Karweick.

*Reed, Shutt, Downs & Shutt,* for defendant Knowles & Peck Company.

*Warren, Shuster & Case,* for defendant Guenzler, Johnson & Hoehn.

*Shedd, Morse, Pierson & Wynkoop,* for defendant William B. Morse Lumber Company.

*Raines & Raines,* for defendant James C. Barry Company.

THOMPSON, J. So far as it affects the questions here we must determine the meaning of this lease, and in so doing the law says greater regard is to be had to the clear intent of the parties than to any particular words which they may have used in the expression of their intent. 13 C. J. 523.

To this paramount rule all others are subordinate. 6 R. C. L. 835.

" Indeed, in giving effect to the general meaning of a writing particular words are sometimes disregarded or supplied." 2 Williston Cont. 1197, 1206, 1217.

And the question the court is seeking to answer being the meaning of the writing, at the time and place when it was made, all the surrounding circumstances at that time necessarily throw light upon it. And this rule applies as well to an unambiguous writing as to an ambiguous one. 2 Williston Cont. 1197, 1198.

The interpretation given by the parties themselves as shown by their acts will be adopted by the court, and to this end not only the acts but the declarations of the parties may be considered. Previous negotiations may be logically relevant to show the meaning attached to the written words. 2 Williston Cont. 1206, 1217.

At page 2 of this lease will be found the following:

" 5. That it will, at its own expense, make all additions to, alterations of and changes in the demised premises which may be necessary for the conduct of its business thereon, but no such changes, additions or alterations shall be made without the previous written consent and approval of the lessors, and all such additions and improvements which may be so made shall become and be the property of the lessors."

What did the parties mean by it?

It seems to me their manifest intention here was to give the tenant the privilege of making changes, additions and alterations in the premises. And it is plain that whether or not such changes, additions or alterations were to be made rested solely in its discretion, the use of the terms " which may be necessary for the conduct of its business " admitting of no other construction, when

taken in connection with the fact that at the time of the lease and when possession was taken, the premises were properly equipped, maintained and used and had been for many years, for the very purposes for which the lease recites the tenant desired them.

The sense of it is: changes may or may not be necessary; the present equipment may or may not be sufficient; if hereafter the tenant feels that changes or additions are necessary for the conduct of the business, it may make them, otherwise it need not. The landlord has no obligation here nor has he any affirmative rights. If the tenant chooses to avail himself of his right, well and good; if not, the landlord is not damaged nor has he any right of action therefor. In passing let it be observed that while it is only " additions, alterations and changes " which may be made by virtue of this clause, it is to " additions and improvements " that the landlords take title.

This clause is not then a covenant but a qualifying condition. 2 Williston Cont. 1283.

It is in no sense a covenant of the tenant to make improvements upon his landlords' freehold, nor does it lodge in the landlords power to compel or require the tenant to erect additions or make alterations and thus improve their property, their only enforcible rights thereunder being to exact performance of the conditions it imposes on the tenant in case it elects to exercise the authority therein conferred upon it. The clause was neither consideration nor inducement, and no possible breach of it or its conditions by the tenant could avoid the lease at the suit of the landlord. *Jones* v. *Menke,* 168 N. Y. 61, 64.

Nor is this view affected by the fact that the additions and improvements were only to be made upon the written consent of the landlord, and should become their property when made. Such provisions are commonly found in present day leases, their design being to protect leased property from damage by additions or alterations, which, by their character, or the character of the operations necessary to their installation or withdrawal, are injurious. The parties did not intend or contemplate that additions, alterations and changes, made under this provision, would in any event or respect be of benefit or improvement to the property, or add value to it. Nor do I find from the evidence that the alterations and additions in fact made were in any manner an improvement to the property, nor did they increase its value.

" We may concede that some of the work done by the respondent did not create any permanent benefit." *Rice* v. *Culver,* 172 N. Y. 60; Lien Law, § 2.

Thus we see that the case at bar is not the usual case of which

so many illustrations are furnished by the citations contained in the plaintiff's brief, and the briefs of the various lienors in the action.

The leading case holding that a requirement in a contract between landlord and tenant that the tenant shall make certain improvements on the premises is a sufficient consent of the owner to charge his property with claims which accrue in making these improvements is *Jones* v. *Menke, supra.* There the tenant was required to fully fit up and complete the premises for the liquor and restaurant business within three months from the date of the lease, otherwise the lease to be null and void, and so Judge Cullen writing sustains the lien upon the theory " That the trial court properly construed this covenant as requiring the tenant to improve the demised portion of the building itself." In support of this holding Judge Cullen cites *Schmalz* v. *Mead,* 125 N. Y. 188; *Miller* v. *Mead,* 127 id. 544; *Burkitt* v. *Harper,* 79 id. 273; *Otis* v. *Dodd,* 90 id. 366. In the *Schmalz* v. *Mead* and *Miller* v. *Mead* cases upon the sale of real estate it was agreed vendee should build certain houses, the vendor from time to time when the buildings were at certain points of completion to advance money. In the *Burkitt* case the lease recited " ' as a part of the consideration of the said letting, that the improvements built or to be built upon the premises are to revert to the parties of the first part at the expiration of this lease, to belong to them without further consideration therefor,' " and the court said: " It is thus clear that the lessors had an interest in the erection of the building — a greater interest even than the lessee * * * In addition to this the lessors lived near the premises and saw the building from time to time while plaintiff was engaged in its erection and made no objection to the erection of the same." In the *Otis* case there was a lease for seven years with the right to two renewals for the same period; buildings and other improvements necessary for the manufacture of Portland cement, which were at once to attach to the freehold, were provided for, and during the progress of the work the lessors came upon the premises and gave some directions as to the method of construction. The point in contest was whether the owner of the realty could be held upon a contract he himself did not make, although he consented to it and the performance of the work under it, the court disposing of this question in the following words quoted from *Nellis* v. *Bellinger,* 6 Hun, 560: " The legislature * * * clearly intended to enforce the equitable principle, that one who knowingly takes the benefit of the property or labor of another, in the form of improvements upon his land, ought to have the land subjected to the lien for the value thereof." Thus it is seen that although in no respect does the case at bar come within the

facts of any of these cases their doctrine is fatal to the liens here being considered.

So it is with the cases cited by the various lienors which have been decided since. In *Gates & Co.* v. *Nat. Fair & Exposition Assn.*, 225 N. Y. 142, the contract not only made certain improvements a part of the consideration but the owners had full knowledge of the changes and alterations as they progressed and the lease provided that a bond be given to secure their completion. In *McNulty Bros.* v. *Offerman*, 221 N. Y. 98, there was an express contract to " make the following improvements " to the cost of which the owner agreed to contribute $15,000 and the contract specified the improvements that were to be made.

In *Barnard* v. *Adorjan*, 116 App. Div. 535, 536, there was a clause requiring the vendee to erect a $50,000 hotel. This the court said was not only a part of the consideration of the proposed sale, " but the vendees agreed to give ample security to the vendors in the sum of $10,000 for the erection of said hotel." In *N. Y. Elevator Supply Co.* v. *Bremer*, 74 App. Div. 400, a steam heating and elevator plant to belong to the lessors was required to be installed within three months, this period being afterwards extended by the owners and the agent of the lessors had notice of the contract. In *Meistrell* v. *Baldwin*, 144 App. Div. 660, the tenant agreed to install a steam heating plant and the landlord sent the contractor to him. In *Butler* v. *Flynn*, 51 App. Div. 225, the court found that the owner inspected and assented to the contract, plans and specifications and that he gave permission for the erection of the building and consented thereto. In *Fisher* v. *Jordan*, 54 App. Div. 621, the record owner of the property admitted his liability and the court held that he knew of and acquiesced in the contract, which was for the erection of a new building.

In like way the courts in various other cases have held the landlord liable upon his consent implied from a covenant in the lease, but only upon a finding that the subject of the lien was an improvement and carried a benefit to the property and this whether it be an alteration, addition or repair.

In *Tinsley* v. *Smith*, 115 App. Div. 708, the tenant agreed to keep all machinery and boilers in good working order at his own cost and expense and, at the end of the term, to leave them and the buildings in as good condition " as reasonable wear and tear will allow." The lease did not provide for improvements nor did it require the consent of the landlord. The court held that the repairs which were made were upon requisition of the landlord by force of this provision, and for such reason that he must be deemed to have consented thereto. Except that it expressly

invokes and redeclares the doctrine of the cases of *Hankinson* v. *Vantine*, 152 N. Y. 20, and *Rice* v. *Culver*, 172 id. 60, this case is not authority upon the questions arising here under clause 5 (additions and alterations), although it is doubtless controlling in the disposition of any of the liens which by their facts come under clause 4 of the lease (repairs).

If the liens here can be sustained it must be upon a finding, supported by proof that these alterations and additions were improvements to the freehold, and that they were done with the consent of the owners. And this is said to be the test: " The owner must either be an affirmative factor in procuring the *improvement* to be made, or having possession and control of the premises assent to the *improvement* in the expectation that he will reap* the benefit of it." *Rice* v. *Culver, supra.*

The proofs establish that at no time after the taking of possession of the premises by the Itta Company did the owners have or attempt to take or exercise control or possession of the premises, so we have this question eliminated.

It is conceded that there is no proof that the landlords consented to the work in writing. Nor does the testimony show any conduct on their part by which they waived this provision of the contract or which should operate against them in any manner by way of estoppel. There is no claim of express waiver, and to establish implied waiver there must be proof that they knew of the work. The case is barren of testimony to such effect. The conversation with Mr. Van Voorhis does not in any manner contemplate or establish such a waiver, or a consent to or notice of such work. The sole purpose of this interview was to ascertain the financial responsibility of the Itta Company and in no respect did it charge the owners with responsibility or call upon them for act, speech or conduct, or their withholding.

If there be waiver, it must be established by conduct or knowledge or notice. There is evidence of none of these in this case. *Lord Const. Co.* v. *Edison P. C. Co.*, 234 N. Y. 411.

On the other hand, every lienor knew that the Itta Company was not the owner of the property, so they, therefore, were put upon their inquiry to ascertain its rights as lessee. And having been put upon their inquiry they are charged with knowledge of the facts. *Spruck* v. *McRoberts*, 139 N. Y. 193; *Valentine* v. *New York Theatre Co.*, 99 Misc. Rep. 517, 522.

There is no proof that any of the work done or materials furnished by the lienors improved, benefited or added to the value of the property. *Hankinson* v. *Vantine, supra*, at page 31.

They were not so intended. Instead the purpose of it all was

to bring the place to accord to the tenant's notions of what was required for the business. They were in fact trade fixtures designed to replace other trade fixtures found installed in the building when the tenant took possession. In the light of present day usages and customs the only inference to be drawn from the proofs is that these repairs, additions and alterations were the usual temporary changes made by a tenant to suit his views to be in turn torn out to give way to like changes at the hands of his successor.

So now finally measuring this case by the test set by the *Rice* v. *Culver* case we find that the owners were not affirmative factors in procuring the *improvements*. That they were not in possession and control of the property. Nor did they assent to the improvement while in possession and control of the property or otherwise, in the expectation that they would reap the benefit. In no sense can it be said by the terms of this lease that the landlords made the tenant their agent for the purpose of improving and thus adding to the value of the real estate. *McNulty Bros.* v. *Offerman, supra.*

There is no benefit " accepted willingly " here under *Husted* v. *Mathes,* 77 N. Y. 388. Nor do we find ourselves within the rule of the *Otis* v. *Dodd* case, *supra.* The landlords did *not* knowingly take the benefit of the property or labor of another, in the form of improvements, and, therefore, ought *not* to have their lands subjected to liens therefor.

" The rule is that a mere general consent or requirement on the part of the owner that the lessee may or shall at his own expense make alterations and repairs to the premises does not constitute consent within the meaning of the Lien Law (*Hankinson* v. *Vantine, supra; Beck* v. *Catholic University,* 172 N. Y. 387; *Rice* v. *Culver,* Id. 60; *Conant* v. *Brackett,* 112 Mass. 18). The cases in which such a consent has been implied are those in which the owner has specifically contracted for, or with a view to the particular improvement which the tenant has put upon the property, such as *Jones* v. *Menke* (168 N. Y. 61) and *Barnard* v. *Adorjan* (116 App. Div. 535), or those in which it has appeared that the owner has done some affirmative act respecting the particular improvement from which his knowledge and consent may properly be inferred, such as *National Wall Paper Co.* v. *Sire* (163 N. Y. 122) and *Butler* v. *Flynn* (51 App. Div. 225)." *Ætna Elevator Co.* v. *Deeves,* 125 App. Div. 842, 843.

It follows that all of the liens filed for services rendered and materials furnished for additions and changes, so called, under clause 5 of the lease, must be held void, and ordered discharged.

Our attention is directed to the fact that, in part, certain of

Surrogate's Court, New York County, March, 1923.          [Vol. 120

these liens are for work done and materials furnished in making repairs. And it is claimed that to such extent they must be sustained because of clause 4 of the lease which is, "That it will keep the said premises and personal property hereby demised and leased, and every part thereof, in good condition and repair during the said term and will surrender the same to the lessors at the end, or sooner termination, of this lease, in as good condition as when taken, reasonable use and wear excepted," the theory being that here is an unequivocal and plain contract, the tenant being bound and the landlords being benefited. No doubt it is a direct and valid promise. And it requires more than the common-law rule did of a tenant in possession. *Tinsley* v. *Smith, supra,* 711. But it is not sufficiently definite to establish consent of the landlords to the making of these repairs. In the words of the *Ætna Elevator Co.* v. *Deeves* case this clause is but a "more general consent or requirement," or as is said in the *Tinsley* v. *Smith* case, "Where the tenant covenants to make *specific* · * * * repairs, * * * But a consent to other alterations than *those specified* * * * will not be implied." "A general covenant by the tenant to repair does not constitute the 'consent' on the part of the landlord required by the Lien Law." *Ætna Elevator Co.* v. *Deeves,* 57 Misc. Rep. 632, 635; affd., 125 App. Div. 842.

There is no testimony that the landlords knew of this work or of its need, and to hold the owner of property responsible for a claim for incidental and trivial repairs to his building rendered on the sole order and credit of his tenant, by reading a consent against the landlord from a clause in a lease which simply calls for "keeping of the premises in repair," would indeed be, as was said by Judge Follett in *Vosseller* v. *Slater,* 25 App. Div. 368, 372, "to improve the landlord out of his estate."

Holding these views, these liens also must be disallowed.

Submit findings and judgment, and questions of costs, on consent or notice. Lien Law, §§ 53, 54.

Judgment accordingly.