39 N.J. Super. 194 (1956)
120 A.2d 617
FANNIE DOLID, PLAINTIFF-RESPONDENT,
v.
LEATHERKRAFT CORPORATION, A CORPORATION OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 6, 1956.
Decided February 21, 1956.
*195 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Max L. Rosenstein argued the cause for appellant.
Mr. Milton M. Unger argued the cause for respondent (Messrs. Milton M. and Adrian M. Unger, attorneys; Mr. Sam Denstman, on the brief).
The opinion of the court was delivered by JAYNE, J.A.D.
A summarization of the factual circumstances will display the characteristics of this controversy. On and prior to July 7, 1950 one Abraham Dolid was a stockholder, director, and officer of the defendant corporation, *196 and on the date mentioned discontinued his relationship with the company by the disposition of his capital stock and by the acquisition from the company in return of the title to the factory property occupied by the company, consisting of a four-story and basement building at Nos. 17-23 Nevada Street, together with the premises at Nos. 37-41-43-45 Marshall Street in the City of Newark.
In Association with the conveyance to him, Dolid executed and delivered to the defendant a lease of the property for a term of five years from July 1, 1950 at an annual rental of $4,200, with an option accorded to the defendant to extend its tenancy for an additional period of five years.
It is significant to notice that the provisions of the lease obligated the defendant to pay as additional rent not only the annual taxes, impositions, charges, and levies assessed upon the premises by the city and also the cost of the insurance coverage, but also to fulfill the following obligation expressed in paragraph 13 of the instrument:
"13. The lessee shall make all necessary repairs, interior and exterior, in and about the leased premises at its own expense; but shall not be required to make any structural repairs or alterations."
The lessor, Abraham Dolid, thereafter died and the title to the property passed by testamentary devise to the decedent's widow, Fannie Dolid, the plaintiff herein, to whom the defendant as lessee attorned.
The litigation was originated by the institution of an action by the plaintiff in the Essex County District Court in which she alleged that the defendant failed to make all necessary repairs, interior and exterior, in and about the leased premises at its own expense in performance of its covenant, and that her demand addressed to the defendant to yield to her the possession of the demised premises for that default had been ignored, wherefore she claimed to be entitled to a judgment for possession.
The action was transferred to the Law Division of this court by an order made under the authority conferred by N.J.S.A. 2A:18-60 et seq., and a jury verdict rendered *197 by a vote of ten to two awarded possession of the demised premises to the plaintiff. A new trial was denied by the trial judge. The defendant impugns the conformable judgment.
The defendant proposes on this appeal that the verdict was the ultimate evolution of the foreign influences of passion and mistake, and that it conspicuously exhibits an oppugnancy to the credible and trustworthy evidence. Where, in the consideration of conflicting testimony, as here, the facts found from the evidence by the jury will sustain the verdict, it is not within the exercise of the purely remedial power of the trial judge or of this appellate tribunal to nullify the verdict simply because, in the opinion of the trial judge or in our perception of the state of the evidence, we think that the jury might preferably have reached a different conclusion. Bowen v. Healy's, Inc., 16 N.J. Misc. 113 (Circ. Ct. 1938), and authoritative citations, affirmed sub nom. Fisher v. Healy's Special Tours, 121 N.J.L. 198 (E. & A. 1938).
Moreover a responsive ear is directed toward the enunciation of our Supreme Court in Hartpence v. Grouleff, 15 N.J. 545, 549 (1954) that the action of the trial court in denying a new trial should not be overthrown unless it is clearly manifest that his determination was without basis in law or fact, or both, with the result that there was a denial of justice under the law. Our appellate power cannot be peremptorily exercised. It is circumscribed by the definitely established precedents.
On this phase of the appeal perhaps some mention should be made of the acknowledged circumstance that when, at the trial, counsel for the defendant in his summation to the jury concentrated a vociferous bombardment upon the questionable trustworthiness of the plaintiff's testimony, the latter, in the view of the jury, shed copious tears.
Well, many women freely welcome a natural propensity to weep, often with and without justifiable provocation and at times perhaps for purely serviceable reasons. It is perhaps true that in some conflicts tears may be more useful than logic. The courtroom has traditionally afforded a stage *198 for drama whereon not only hysterical litigants but talented attorneys sometimes awaken souls by the tender strokes of emotional art. A most vigilant judge cannot be expected to prevent the spontaneous occurrence of such episodes. Resultant mistrials? No. Judicial discretion has its field of employment not only to protect the just rights of litigants, but also to prevent waste of time and effort. In the present instance no assuaging action of the judge was requested at the trial. Cf. Schuttler v. Reinhardt, 17 N.J. Super. 480, 484 (App. Div. 1952). We are not persuaded that the plaintiff's emotional exhibition thus provoked was of such a prejudicial extent and quality to warrant a nullification of the final judgment.
We proceed to consider the additional points. The trial judge stated in his charge:
"This whole controversy appears to revolve around the meaning of the phrase `necessary repairs.' Necessary for what? Necessary to preserve the building against waste, against the elements, necessary to keep it in repair for the use of the tenant?"
The criticism of the charge to the jury is focused upon the following quoted passage:
"The lease in this case requires the tenant to make all necessary repairs, interior and exterior, in and about the leased premises at its own expense. The lease also provides that if the tenant defaults in its obligation under the lease and the default continues for twenty days after written notice given to the tenant, the landlord may re-enter the property and terminate the lease, and such notice has been given in this case.
The obligation to make necessary repairs under the lease in this case means that the tenant is required to make such repairs as are needed to render the premises tenantable for the purpose for which they were rented, and also to make such ordinary repairs as are necessary to prevent injury, waste and decay of the premises and make them safe for the operation for which they were designed."
Our italicized words draw attention to the passage which counsel for the defendant insists was prejudicially erroneous. verbatim in the annotation appearing in 45 A.L.R. 24:
A concise statement of counsel's position finds expression
*199 "A covenant to make `necessary repairs' obligates the tenant to make such repairs as are necessary for the use of the leased premises by the tenant for the purpose for which they were leased."
See, also, 32 Am. Jur. 673, 674, § 789.
The import of counsel's insistence is that the covenant embodied in the lease obligated the defendant to make only such repairs as the defendant lessee deemed necessary for its use of the demised premises.
In quest of pertinent decisions the trail pursued by counsel in their briefs has guided us somewhat exclusively to the early decisions of the courts of our neighbor, such as those in White v. Albany Railway, 17 Hun. 98 (N.Y. Sup. Ct. 1879); Tinsley v. Smith, 115 App. Div. 708, 101 N.Y.S. 382 (App. Div. 1906); Wanamaker v. Butler Mfg. Co., 136 App. Div. 265, 120 N.Y.S. 1000 (App. Div. 1910); Marcy v. City of Syracuse, 199 App. Div. 246, 192 N.Y.S. 674 (App. Div. 1921). But, as indicated in the plaintiff's answering brief, the cited decisions, when subjected to a studious and discriminate consideration, do not create a confident assurance that the proposition of law here advocated by defendant's counsel has been of late or now is the accepted principle even in that State.
Let us, therefore, indulge in our own rationalization of the factual and legal characteristics of the present case. The starting point is the basic common-law obligation of a tenant who has covenanted to make repairs to the demised premises. The obligation arises out of the tenant's own direct and positive undertaking. Coles v. Celluloid Manufacturing Co., 39 N.J.L. 326 (Sup. Ct. 1877), affirmed 40 N.J.L. 381 (E. & A. 1878); Ashby v. Ashby, 59 N.J. Eq. 547 (Ch. 1900). Cf. Camden Trust Co. v. Handle, 130 N.J. Eq. 125, 131 (Ch. 1941), reversed for other reasons 132 N.J. Eq. 97 (E. & A. 1942); N.J.S.A. 2A:65-2. The covenant may be limited, contingent, or otherwise lawfully qualified by its terms.
Here, however, the lessee covenanted to make "all necessary repairs, interior and exterior, in and about the leased *200 premises at its own expense" other than "structural repairs or alterations."
A designation of the nature of the repairs which the plaintiff alleged that the defendant neglected and refused to make appears in the pretrial order, such as the need of paint on the garage, the air shaft, the fire escapes, the walls and ceilings, the window sash frames and sills. In need of repair, stated the plaintiff, are the broken windows and chains, the stair treads, the floors in front of the elevator shaft, and the roof covering. Can it be reasonably concluded that it was contemplated by the parties that repairs of such a nature and character were to be classified as structural and thus beyond the reach of the defendant's covenant? Vide, Bertsch v. Small Investments, Inc., 4 N.J. 520 (1950).
This inspires us to deduce from an examination of the entire lease and the circumstances accompanying and surrounding the creation of the tenancy, the logically probable intentions of the parties. See, Puget Investment Co. v. Wenck, 36 Wash.2d 817, 221 P.2d 459, 20 A.L.R.2d 1320. The motivating considerations were the desire of Dolid to withdraw his interest in the defendant corporation, and the wish of the defendant was to retain for the future five or ten years its full and complete use of the premises as formerly under its own ownership.
In harmony with that purpose the defendant covenanted to pay the prescribed rent and all taxes and carrying charges, and to keep the existing premises in repair, and in return was accorded the privilege of using the demised premises "for any and all purposes not prohibited by law and not prevented by any restriction of record" (par. 4); the right "to make such alterations and improvements in and to the demised premises as it may desire to make" (par. 16); the opportunity "to assign this lease or any interest therein, and to sublet the said premises or any part thereof * * *" (par. 18).
Significant also is the defendant's promise promptly to comply "at its own cost" with all present and future federal, *201 state, county or municipal requirements respecting the use and occupancy of the premises (par. 15).
The preexisting relationship between the lessor and the defendant, and the terms of the lease so broad and liberally favorable to the lessee's use of the premises seem rationally to promote the deduction that the intended purpose was to place the defendant as effectively as practicable in the continued situation of an owner during the term of the tenancy, so to enjoy the privileges normally incident to ownership and correspondingly to incur the current obligations of an owner.
To construe the covenant in question to mean that the defendant was obligated thereby to make only such repairs as it itself deemed to be necessary for its own uses and purposes would certainly give it a violent and unjustifiable twist. We resolve that the court's instruction to the jury in that particular was not erroneous.
The trial judge incorporated in his charge a reference to the following definition of the adjective "necessary" taken from Webster's New International Dictionary: "Impossible to be otherwise, or to be dispensed with, without preventing the attainment of a desired result; indispensable; requisite; essential."
Counsel for the defendant now belatedly criticizes the adaptability of the definition to the subject of the present case and would allure us to a profound study and scientific consideration of the phenomena of the gradations of meaning and semantological applications of English adjectives. We shall not on this occasion be enticed to do so since in the present instance no objection to the definition or request to deliver another or different definition was interposed by counsel for the defendant at the trial, and the tendencies of the definition would be more likely to operate prejudicially, if at all, to exaggerate the plaintiff's burden of proof. Cf. Ryan v. Deans, 114 N.J.L. 199 (E. & A. 1935). Moreover we are not convinced that the jury was thereby misguided with manifestly resultant harm and injury to the substantial rights of the defendant. R.R. 1:5-3(c); R.R. 2:5.
*202 In view of the purport of the defendant's requests to charge, the subject matter of which we have previously discussed, and in the light of the entire charge delivered by the court, the court's rejection of the requests was not in our opinion inconsistent with substantial justice. R.R. 1:5-3(b); R.R. 2:5.
The judgment is affirmed.