CHURCH E. GATES & COMPANY, INCORPORATED, Respond-
ent, *v.* NATIONAL FAIR AND EXPOSITION ASSOCIATION
et al., Defendants, EMPIRE CITY RACING ASSOCIATION,
Appellant, and WRIGHT OGDEN COMPANY, INCORPO-
RATED, et al., Respondents.

**Mechanic's lien — landlord and tenant — validity of lien
filed against property of landlord, for materials furnished and
work done in improvements to property made by tenant —
when designation of corporate owner of property by original
name instead of new corporate name not a misnomer— liens
filed against stockholder and director of corporation cannot
be enforced as liens against the corporation — laborers cannot
enforce liens for unpaid checks delivered to and held by bona
fide holders.**

1. Where the trial court has found, in an action to foreclose a
mechanic's lien (Cons. L. ch. 33), that the improvements were made
with the consent and knowledge of the owner and such finding has
evidence to sustain it, a judgment enforcing the lien must be sustained.

2. Where in liens filed against real property owned by the
" Empire City Racing Association " the name of the owner was
stated as the " Empire City Trotting Club," which was the original
name under which the owner was incorporated, and the name under
which most of its property was acquired, but before the time
involved the name had been legally changed to " Empire City Racing
Association," such misnomer, although defective, was not a sub-
stantial " misdescription of the true owner," and hence the lienors,
who gave the name of the owner of the real property as " Empire
City Trotting Club," should be deemed to have substantially complied
with the Lien Law.

3. Where liens sought to be enforced herein were filed against an
officer and stockholder of the " Empire City Racing Association " and
actively connected with its management, but who had no personal
interest in its real property as an owner, it must be held that this
was not a substantial compliance with the statute.

4. Liens filed and docketed against " Empire City Racing Asso-
ciation and " another as owners are valid as against the association and
were not made valueless and ineffectual by the further docket of said
liens as against such other person, who was an officer of the association,
as an alleged owner.   (Lien Law, § 10.)

5. Where worthless checks for work on the improvements were given by the lessee to laborers who, not knowing the checks were worthless, indorsed and delivered them in payment of bills to others who still hold them, such laborers cannot urge their right to file and sustain a lien for their labor accounts so far as they were canceled by the checks so used by them. Such checks still outstanding in the hands of *bona fide* holders represent an indebtedness against the lessee and the holders of the checks have a valid claim against the exposition association.

6. The trustee in bankruptcy of the lessee holds his title subject to the liens filed by materialmen and laborers which were filed within the time prescribed by statute.

*Gates & Co.* v. *Nat. Fair & Exposition Assn.*, 172 App. Div. 581, modified.

(Argued November 26, 1918; decided January 7, 1919.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered May 19, 1916, affirming a judgment in favor of plaintiff and defendants, respondents, entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Joshua M. Fiero, Joshua M. Fiero, Jr.,* and *John H. Rogan* for appellant. There was no owner's request or consent to the improvements, which is the basis of the liens, and, in fact, there was a written dissent by the owner to the improvements or alterations, unless security was furnished by the lessee. (*Hartley* v. *Murtha,* 36 App. Div. 196; *Mitchell* v. *Dunmore Realty Co.,* 126 App. Div. 829; *Powers* v. *Schlicht Power Co.,* 23 App. Div. 380; *Orvis* v. *Warner & Co.,* 75 App. Div. 463; *Mathews* v. *Hardt,* 79 App. Div. 570; *Miners & Merchants Bank* v. *Ardsley Hall Co.,* 113 App. Div. 194; *Brigger* v. *M. R. F. Assn.,* 79 App. Div. 149; *Karsch* v. *Pottier & Stymus Mfg. Co.,* 82 App. Div. 230; *Marine Bank* v. *Nelson,* 31 N. Y. 33; *Wilson* v. *Met. El. Ry. Co.,* 120 N. Y. 145;

*Fifth Nat. Bank* v. *Navassa Phosphate Co.*, 119 N. Y. 256; *Merchants Banking Assn.* v. *N. Y. & S. White Lead Co.*, 35 N. Y. 505.) The W. J. Sullivan and Lawrence Bros. liens were not valid in any event as against the real property of the defendant, appellant, Empire City Racing Association. (*McNulty Bros.* v. *Opperman*, 164 App. Div. 949; 221 N. Y. 98.) Mechanics' liens filed by laborers who cashed their pay checks with third parties and retained the moneys are invalid. (*Knapp* v. *Brown*, 45 N. Y. 207; *Muldoon* v. *Pitt*, 54 N. Y. 269; *Rollins* v. *Cross*, 45 N. Y. 766; *Deaz* v. *Chrystie*, 2 Abb. Pr. 109; *Ogden* v. *Alexander*, 63 Hun, 56; 140 N. Y. 356; *Gibson* v. *Lenane*, 94 N. Y. 183; *Stevens* v. *Ogden*, 130 N. Y. 182.) The lien notices of the plaintiff and defendants, respondents, lienors were defective and insufficient. (*Grippen* v. *Weed*, 22 App. Div. 593; 165 N. Y. 612; *Finn* v. *Smith*, 186 N. Y. 466; *Fanning* v. *Belle Terre*, 152 App. Div. 718; *Mahley* v. *German Bank*, 174 N. Y. 499; *Strauchen* v. *Pace*, 195 N. Y. 167; *Bossert* v. *Fox*, 89 App. Div. 7.)

*George H. Taylor, Jr.*, and *Everett L. Barnard* for plaintiff, respondent, and Wright Ogden Company, defendant, respondent. The findings of consent on the part of the owner as far as the parties joining in this brief are concerned being supported by evidence the judgment of the Special Term charging the owner's interest in the property with the liens of said parties and the Appellate Division's determination of affirmance were both proper as to the plaintiff and defendant Wright-Ogden Company; as a matter of law the fee interest of the appellant was chargeable with their liens. (*Wahle Phillips Co.* v. *Fifty-ninth Street, etc., Co.*, 153 App. Div. 17; *McNulty Bros.* v. *Offermann*, 152 App. Div. 181; *N. Y. El. S. & R. Co.* v. *Bremer*, 74 App. Div. 400; *Hilton & Dodge Lumber Co.* v. *Murray*, 47 App. Div. 289; *Nat. Wall Paper Co.* v. *Sire*, 163 N. Y. 122; *Rice* v. *Culver*, 172 N. Y. 60; *Cowen* v.

*Paddock,* 137 N. Y. 188; *Butler* v. *Flynn,* 51 App. Div. 225; *Mosher* v. *Lewis,* 14 App. Div. 565; *Steeves* v. *Sinclair,* 56 App. Div. 448; 171 N. Y. 676; *Barnard* v. *Adjoran,* 166 App. Div. 535; 191 N. Y. 556; *Tinsley* v. *Smith,* 115 App. Div. 708; 194 N. Y. 581; *Jones* v. *Menke,* 168 N. Y. 61, 64; *Miller* v. *Mead,* 127 N. Y. 544, 549; *Gates* v. *Natural Fair, etc.,* 172 App. Div. 581.)   The notices of lien filed by the parties on whose behalf this brief is submitted are sufficient in form to charge the real estate in question including the fee interest of the appellant therein; the tenant did not appeal to this court.   (*Clarke* v. *Heylman,* 80 App. Div. 572; *Kerrigan* v. *Fielding,* 47 App. Div. 246; *Hubbell* v. *Schreyer,* 14 Abb. [N. S.] 284; *Beals* v. *Congregation,* 7 E. D. Smith, 564; *Anderson* v. *Dillaye,* 47 N. Y. 678; *Luscher* v. *Morris,* 18 Abb. [N. C.] 67; Lien Law, art. 2, § 9, subd. 7; *Waters* v. *Goldberg,* 124 App. Div. 511; *Grippin* v. *Weed,* 22 App. Div. 593; 165 N. Y. 612; *Strauchen* v. *Pace,* 195 N. Y. 167; *Kerrigan* v. *Fielding,* 47 App. Div. 246; *Hall* v. *Thomas,* 111 N. Y. Supp. 979.)   The letters of the appellant to the fair association accorded the consent of the owner unconditionally; the consent was absolute and the acceptance of the individual bond was likewise absolute; the letter constituted merely a contract between the owner and the tenant, in pursuance of which the tenant was required to give a supplemental bond.   (*Comey* v. *United Surety Co.,* 217 N. Y. 268; *Geneva M. S. Co.* v. *Coursey,* 45 App. Div. 248; *Maloney* v. *Iroquois Brewing Co.,* 63 App. Div. 454.)

*Nathan S. Zucker* for Percy Bloom, respondent.   The defendant, appellant, Empire City Racing Association, consented to the making of the alterations and improvements which are the basis of the liens filed.   (*Miller* v. *Mead,* 127 N. Y. 544; *Wahle Phillips Co.,* v. *West 59th St. Co.,* 153 App. Div. 17; *McNulty Bros.* v. *Offerman,* 141 App. Div. 730; *Barnard* v. *Adorjan,* 116 App. Div.

535; 191 N. Y. 566; *Tinsley* v. *Smith*, 115 App. Div. 708.) The mechanic's lien filed by defendant Percy Bloom is in full compliance with the statute. (*Burkitt* v. *Harper*, 79 N. Y. 278.)

*William J. Wallin* for Samuel Woodfaulk et al., respondents. The alterations and improvements upon which the labor lienors worked were made with the consent of the owner, Empire City Racing Association, one of the appellants herein. (*Rice* v. *Culver*, 172 N. Y. 60.) The worthless checks given to the labor lienors did not operate as payment, nor prevent the workmen from filing liens. The lienors having become re-possessed of the checks indorsed by them to third parties, and having offered to surrender the checks on payment of their liens, were properly awarded judgment on their liens. (*Teaz* v. *Chrystie*, 2 Abb. Pr. 109; *Linneman* v. *Bieben*, 85 Hun, 477.) The notices of lien of the labor lienors were sufficient and valid. (*Chambers* v. *Vassar's Sons & Co., Inc.*, 81 Misc. Rep. 562; *McDonald* v. *Mayor, etc.*, 170 N. Y. 409; *Strauchen* v. *Pace*, 195 N. Y. 167; *De Klyn* v. *Gould*, 165 N. Y. 282.)

*Milo J. White* for Yonkers Lumber Company, respondent. The evidence establishing the consent of the owner to the improvements made upon the property is sufficient. (*Steeves* v. *Sinclair*, 56 App. Div. 448; *Schmalz* v. *Mead*, 125 N. Y. 188; *Miller* v. *Mead*, 127 N. Y. 544.) The Yonkers Lumber Company contends that the name of the owner, as attempted to be stated in its lien, to wit, "James Butler," was sufficient, under the statute, to bind the interests of the lessor in the real property affected by the lien. (*Abelman* v. *Mayer*, 122 App. Div. 470; *Waters* v. *Goldberg*, 124 App. Div. 511.)

*Stephen Holden* and *James H. Cavanaugh* for Jacob Norden et al., respondents. There was consent of the

owner within the meaning of section 3 of article 2 of the
Lien Law. (Ray on Mech. Liens, 279; *Nat. W. P. Co.*
v. *Sire,* 163 N. Y. 122; *Jones* v. *Menke,* 168 N. Y. 61;
*Montant* v. *Moore,* 135 App. Div. 334; *Toplitz* v. *Bauer,*
161 N. Y. 325; *Dunn* v. *Steubing,* 120 N. Y. 232; *Clark* v.
*West,* 193 N. Y. 349.) The notices of liens filed by these
defendants fully comply with the statute. (*De Klyn* v.
*Gould,* 165 N. Y. 282; *Strauchen* v. *Pace,* 195 N. Y. 167.)

*William J. Foster* and *Francis M. Applegate* for Colwell
Lead Company, respondent. The plaintiff amply proved
consent on the part of the Empire City Racing Association
to the improvements on the Empire City track, which
proof is available in respect to the plumbing materials
furnished by this defendant, respondent. (*H. & D.
Lumber Co.* v. *Murray,* 47 App. Div. 289; *Nat. W. P.
Co.* v. *Sire,* 163 N. Y. 131; *Tinsley* v. *Smith,* 115 App.
Div. 708; *Burkitt* v. *Harper,* 79 N. Y. 273; *Otis* v. *Dodd,*
90 N. Y. 336; *Miller* v. *Mead,* 127 N. Y. 544; *Jones*
v. *Menke,* 168 N. Y. 61; *Wahle Phillips Co.* v. *59th
St.-Madison Ave. Co.,* 153 App. Div. 17; *Wahle Phillips
Co.* v. *Fitzgerald,* 83 Misc. Rep. 636; *Barnard* v. *Adorjan,*
116 App. Div. 535; *Steeves* v. *Sinclair,* 56 App. Div. 448;
171 N. Y. 676.) The naming of the Empire City Trotting
Club, the original name of the Empire Racing Asso-
ciation, sufficiently complied with section 9 of the Lien
Law in naming the owner of the premises. (*Fish* v.
*Anstey Const. Co.,* 71 Misc. Rep. 2; *Strauchen* v. *Pace,*
195 N. Y. 167; *Hyatt* v. *McMahon,* 25 Barb. 457.) The
contents of the lien notice of this defendant-respondent's
mechanic's lien complied with the statute. (*Burkett* v.
*Harper,* 79 N. Y. 273.)

CHASE, J. This action is brought to foreclose a
mechanic's lien for materials furnished pursuant to a
contract with a lessee of real property and used in

improvements thereon.   Included among the defendants are the owner of the real property, Empire City Racing Association, the appellant; its lessee, National Fair and Exposition Association; ten individuals and corporations each of whom has filed a lien for materials furnished to the lessee and used in such improvements; one hundred and eleven individuals, each of whom has filed a lien for labor performed on such improvements, and the trustee in bankruptcy of the lessee.   Judgment was obtained for the foreclosure of the plaintiff's lien, and also of the liens of the ten defendant materialmen, and seventy-nine of the laborers who had filed liens for their labor.   The lien of one of the ten materialmen was not, however, sustained as against the appellant herein.   The judgment in favor of the plaintiff and of the nine defendant materialmen and seventy-nine laborers sustaining their liens respectively, and directing the foreclosure thereof, was affirmed by the Appellate Division.   It is as to each of said defendant lienors, challenged by the appellant in this court.

The Lien Law (Cons. Laws, ch. 33), section 3, provides:  " A contractor, sub-contractor, laborer or material-man, who performs labor or furnishes materials for the improvement of real property with the consent or at the request of the owner thereof, or of his agent, contractor or sub-contractor, shall have a lien for the principal and interest of the value, or the agreed price, of such labor or materials upon the real property improved or to be improved and upon such improvement, from the time of filing a notice of such lien as prescribed in this article."

Proof of the consent or request of the appellant as the owner of the real property in question, to the performance of labor and furnishing of materials for the improvement thereof, is essential to sustain the several liens.   The appellant owner denies that its consent has been given, or that it requested the performance of the labor or

furnishing of the materials within the meaning of the section of the statute quoted. The Special Term has found that the consent and request was given and that finding has been sustained by the affirmance of the judgment at the Appellate Division.

On the 28th day of December, 1912, an agreement was entered into between the appellant and the defendant National Fair and Exposition Association, by which the racing association leased to the exposition association the real property on which the improvements were made for the term of five years from January 1, 1913, together with the personal property thereon. The exposition association agreed at its own expense to hold, annually, on said grounds, known as the Empire City Park, an agricultural, live stock and amusement enterprise, during the month of August, and, under certain conditions, for a longer period, and to pay the racing association twenty per cent of the gross receipts from the sale of tickets and admissions, with certain exceptions therein specified, and twenty per cent of the gross receipts for admissions to and seats in the grand stand. The exposition association agreed to keep the grounds and buildings in good condition and repair, and to use the same for other entertainments, baseball, public meetings, racing, horse training, etc., subject to the approval of the racing association, and to pay the racing association fifty per cent of the moneys received from all such sources except as in the agreement specifically provided.

It also therein provided that the exposition association has the " Right to change the location of, alter, re-arrange or remodel any buildings, fences, walks, roads or track now on the grounds provided *the consent of the first party is first obtained in writing.*"

It also therein provided that the exposition association has " The right to erect new buildings on such locations as are approved by the first party (Racing Association)

or to allow the privilege of erecting buildings to others; such new buildings as may be erected by the second party (Exposition Association) are to remain their property and may be removed from the premises by them at the termination of this contract provided that all the agreements herein contained have been faithfully performed by them.

" All other buildings erected by exhibitors are subject to removal by their owners at any time, it being understood that second party (Exposition Association) is to provide insurance on any buildings erected by themselves or by their permission."

It also therein provided that the exposition association is to " Spend or cause to be spent the sum of Twenty thousand dollars ($20,000) on buildings and improvements within two (2) years, and a total sum of Fifty Thousand dollars ($50,000) within four (4) years." It also contained a provision for the renewal of the lease at the end of the term.

The exposition association, without first obtaining the consent of the racing association in writing, commenced, early in 1913, to alter, re-arrange and remodel many of the buildings, fences, walks, roads and tracks on said grounds.  On July 9, 1913, the exposition association delivered a letter to the racing association and therein referred to conversations theretofore had with its officers, and gave a detailed statement of changes and additions that it desired to make to the buildings and grounds of the park and asked for written consent therefor.  The racing association replied on the same day, in which reply it referred to the provisions of the lease by which changes and additions are required to be made at the expense of the exposition association and added: " Subject to your furnishing us with a satisfactory guarantee of your ability to pay for such changes and additions and provided the work is completed before August 31, 1913, we will

accord you the following consents under the terms of said lease to take effect when such guarantee is furnished." Then followed a statement in detail of proposed alterations and improvements to which it would assent as in the letter stated.

It refused its assent without qualifications to certain proposed alterations and it also included a statement as follows: " In reference to the improvements of the present roadways and making new connections for the convenience of the public, we shall require full details before giving our sanction to the same."

On July 10 the exposition association gave to the racing association a bond as required by the letter of July 9 signed by two individual sureties. On July 11 the racing association wrote the exposition association as follows:

" We beg to acknowledge receipt of your temporary bond and to say that with the understanding that you will supplement it by July 22nd 1913 with one issued by the National Surety Company of New York City for $20,000 the same is acceptable to us."

The bond with individual sureties was not rejected but retained and accepted. The statement in the letter quoted that its acceptance was with the understanding that another bond supplementary to it be issued by the National Surety Company by July 22d is a condition subsequent to the receipt, and its acceptance of the bond styled by it a " temporary bond." The bond with individual sureties or, as termed, the " temporary bond," is the one referred to as acceptable to the racing association and its acceptance constituted a consent to the improvements within the meaning of the Lien Law. Such consent was in no way qualified or restricted. It was as broad and comprehensive as the obligation of the bond or guarantee so accepted by it.

The failure of the exposition association to give as

required by the letter accepting the temporary bond, a further and supplementary bond of the National Surety Company, did not in itself constitute a withdrawal of the consent of the racing association to the continuance of the improvements at least without some specific affirmative action on the part of the racing association. The improvements that were continued pursuant to the consent during the time between the receipt of the letter of July 11 and July 22, the day named therein, proceeded without interruption or notice so far as appears by the record until about August 18th, when proceedings were commenced which resulted in the exposition association being declared a bankrupt on August 29, 1913.

Expenditures by the exposition association to the amount of $20,000 in two years, and $50,000 in four years, were not only contemplated by the racing association but were, as we have shown from the lease, made obligatory on the part of the exposition association. The rental to be paid by the exposition association was wholly dependent upon the receipts to be obtained from the exhibitions to be held on the grounds. The racing association was in part to reap the benefit of the expenditures for improvements through its share in the anticipated receipts from the contemplated use of the property. Its share of such contemplated receipts was its only rental under the lease.

It also appears from the lease that the exposition association was required by it at its own expense to keep the grounds and buildings in good condition and repair. This provision was without qualification. The provision in the lease that the owner's written consent should be given before any alterations were made in the buildings, fences, walks, roads or track was for the benefit of the owner and could be waived by it. The possession of the property was in the exposition association but the improvements were not alone at its initiative. They

were contemplated by the parties, and in part at least required under the lease by which the exposition association obtained and held its possession of the property. There is evidence that the racing association had full knowledge of the changes and alterations that were being made during the time of the correspondence mentioned and at all times stated in the several liens that were filed and that such improvements were being hastened by common consent in preparation for the August exhibition to be given in accordance with the terms of the lease and that the secretary of the exposition association from August 2 maintained an office in the property in view of the improvements then in progress and accepted for the racing association its share of the receipts as provided by the lease.

Full knowledge and general acquiescence in the improvement of the real property considered in connection with the covenants and agreements contained in the lease are some evidence of consent on the part of the owner within the meaning of the statute.   (*National Wall Paper Company* v. *Sire*, 163 N. Y. 122; *Barnard* v. *Adorjan*, 116 App. Div. 535; affd., 191 N. Y. 556; *Tinsley* v. *Smith*, 115 App. Div. 708; affd., 194 N. Y. 581.)   The Special Term found that the improvements were made with the consent and knowledge of the owner and such finding is not without some direct and other evidence to sustain it.

It is urged that the lien of the defendant William J. Sullivan should not be sustained because the appellant expressly refused its consent to the particular improvements upon which the materials furnished and work done by him were used and performed.   The lien of the defendant Sullivan was filed for " gravel, crushed stone and sand " furnished, and for " carting, hauling, sprinkling, watering, and repairing and cleaning up generally the driveways and tracks " on the real estate

described.   If the court had found that the materials
furnished and work done by the defendant Sullivan
were for " the improvement of the present roadways and
making new connections for the convenience of the
public " the contention of the appellant would be sus-
tained in view of the express refusal of the racing associa-
tion to " sanction the same."   The court did find that
the defendant Sullivan furnished the materials and did
the work with the knowledge and consent of the racing
association, and we cannot say that there is not some
evidence to sustain such finding.   The exposition associa-
tion was required at its own expense " to keep the grounds
and buildings in good condition and repair."   And
qualified assent was also given in the letter of July 9
to finish the half-mile track.

In the liens filed severally by the plaintiff and by five
of the defendant materialmen it is stated that the name
of the owner of the real property against whose interest
the lien is claimed is Empire City Trotting Club.   In
the liens filed severally by the defendants Yonkers
Lumber Company and Lawrence Brothers, material-
men, it is stated that the name of the owner of the real
property against whose interest the lien is claimed is
James Butler.   In each of said liens it was stated that the
interest of the owner, so far as known to the lienor, is in fee
simple and said liens were filed and indexed accordingly.

The value and effect of these liens depend upon the
statute.   The term " owner " when used in the statute
" includes the owner in fee of real property, or of a less
estate therein, a lessee for a term of years, a vendee in
possession under a contract for the purchase of such
real property, and all persons having any right, title or
interest in such real property, which may be sold under
an execution in pursuance of the provisions of statutes
relating to the enforcement of liens of judgment."
(Sec. 2.)

The notice of lien shall state: "The name of the owner of the real property against whose interest therein a lien is claimed, and the interest of the owner as far as known to the lienor." (Lien Law, sec. 9, subd. 2.)

"A failure to state the name of the true owner or contractor, or a mis-description of the true owner, shall not affect the validity of the lien." (Lien Law, sec. 9, subd. 7.)

The Lien Law quoted "is to be construed liberally to secure the beneficial interests and purposes thereof. A substantial compliance with its several provisions shall be sufficient for the validity of a lien and to give jurisdiction to the courts to enforce the same." (Lien Law, sec. 23.)

It appears that the appellant was incorporated by the name Empire City Trotting Club. In 1908, pursuant to an order of the Supreme Court authorizing it so to do, its name was changed to Empire City Racing Association in which name it has since continued. The change of name was authorized by title 10 of chapter 17 of the Code of Civil Procedure as it then existed. A large part of the real property described in the lease was purchased by the appellant and conveyed to it in the name of Empire City Trotting Club before its name was changed to Empire City Racing Association. The change of name in no way affected the identity of the corporation. The name of the owner as given in the liens of the several lienors mentioned was defective but not a substantial "misdescription of the true owner." The entry by the county clerk of the name of the appellant as given in the liens in the book as provided by the Lien Law, section 10, would give to the public substantially the same notice of the lien on appellant's real property as if the exact name by which appellant is now known had been used, or at least its entry therein would put a person examining the lien docket upon inquiry as to the intent and scope of the lien. No one has been misled

by the lienors using the name by which the appellant was incorporated and the lienors who gave the name of the owner of the real property as Empire City Trotting Club should be deemed to have substantially complied with the statute.

The liens of the Yonkers Lumber Company and Lawrence Brothers cannot be sustained. James Butler, named as the owner of the real property described in each of said liens, is an officer and stockholder of the racing association and actively connected with its management but he has no personal interest in the real property as an owner. A lien is not invalid simply by reason of a misdescription of the true owner if there is a substantial compliance with the statute. Where, however, the person named in the alleged notice of a lien as the owner of the real property against whose interest therein a lien is claimed is not an owner of any interest therein which is defined in the statute, there is a complete failure to comply with the directions thereof and the alleged lien is ineffectual and worthless. The findings of the Special Term so far as they sustain the filing of said liens against the appellant as owner are without any evidence to sustain them. There is no special finding of the court in any way sustaining either of said liens. It was not the legislative intent to give a lien upon the property through the filing of any notice describing it; it was intended that such a lien should be acquired as against the title or interest of the person party to or assenting to the agreement under which the work was done " against whose interest therein a lien is claimed " in the notice. If the notice fails to state the name of the true owner then a provision of the 9th section preserved the validity of the lien so far as the person named as owner and against whom a lien is asked in fact, may have some title or interest. If this provision were to be construed as giving a lien against the unnamed owner of the fee, the

construction would violate the plain legislative intent that the notice of lien should only affect the person whom the notice names, or attempts to name as " owner." (*Strauchen* v. *Pace,* 195 N. Y. 167; *De Klyn* v. *Gould,* 165 N. Y. 282.)

Although it is expressly provided that the Lien Law must receive liberal construction it may not be extended to cases not clearly within its general scope and purview. (*Spruck* v. *McRoberts,* 139 N. Y. 193.)

We next come to the judgment so far as it affects the seventy-nine laborers whose liens were sustained. Each of the said seventy-nine liens was filed against the Empire City Racing Association and James Butler, as owners. We do not think that the liens are invalid as against the Empire City Racing Association because James Butler is also named as an owner. The notice of lien when entered in the " lien docket " (Lien Law, sec. 10) by the county clerk as against the racing association as owner, was not made valueless and ineffectual by the further docket of said liens as against James Butler as an alleged owner.

The delivery of worthless checks to the laborers by the exposition association for the whole or a. part of the amount of their accounts for labor severally, does not in itself constitute a payment of said accounts particularly as to the laborers who upon ascertaining that the checks were worthless returned the same to the association. Some of the laborers, not knowing that the checks were worthless, indorsed and delivered them severally in payment for supplies received by them and several of those who so used their checks failed to pay and redeem them after they found that there was no money in the bank to pay the checks. Such defendants are not in a position to urge their right to file and sustain a lien for their accounts severally so far as they were canceled by the checks so used by them. So long as such checks

remain outstanding in the hands of *bona fide* holders they represent an indebtedness against the exposition association and the holders of said checks have a valid claim against the exposition association therefor while the liability of the laborers thereon, if at all, is by reason of their indorsement or guarantee express or implied of such checks when the same were transferred by them. Seven of the defendant laborers are affected by their having so transferred the checks received by them from the exposition association and have failed to repossess themselves of and surrender such checks to the exposition association or to the court herein.

The trustee in bankruptcy of the exposition association holds his title subject to the liens filed by materialmen and laborers which were filed within the time prescribed by statute. (*Gates & Co.* v. *Stevens Cons. Co.*, 220 N. Y. 38.)

There are many other questions presented on this appeal. It is enough in this opinion to say that they have all been examined by the court and we concur in the conclusions reached by the Special Term and Appellate Division herein so far as the same affect the questions now before this court.

The judgment so far as it is entered in favor of the defendants Yonkers Lumber Company and Lawrence Brothers should be reversed, with costs to the racing association against each in this court and in the Appellate Division. The judgment so far as it is in favor of the defendant laborers John Highley, James Cooney, Edgar C. Hulse and William Van der Wende should be reduced as follows:

The judgment in favor of John Highley from $37.50 and interest to $21 and interest;

The judgment in favor of James Cooney from $22 and interest to $3.25 and interest;

The judgment in favor of Edgar C. Hulse from $80.99 and interest to $10.68 and interest;

The judgment in favor of William Van der Wende from $72.75 and interest to $10.70 and interest.

The judgment so far as it is in favor of the defendant lienors, Frederick McAleese, Thomas Hanrahan and Thomas Birch should be reversed as without any evidence to sustain it.

The reduction of the judgment as against the defendant laborers named and its reversal as against the other defendant laborers named should be without costs. The judgment in favor of the plaintiff and the defendants other than the defendants Yonkers Lumber Company, Lawrence Brothers, John Highley, William Van der Wende, James Cooney, Edgar C. Hulse, Frederick McAleese, Thomas Hanrahan and Thomas Birch should be affirmed, with costs against the appellant in favor of each respondent or association of respondents filing a brief in this court by one attorney or firm of attorneys.

HISCOCK, Ch. J., HOGAN, CARDOZO, POUND, McLAUGHLIN and ANDREWS, JJ., concur.

Judgment accordingly.