Matthew M. Levy, J.
This is an application by the petitioner Lycee Francais de New York, a domestic corporation and the owner of certain real property against which a mechanic’s lien was filed by each of the respondents Calagna and Siegel, to cancel of record the notices of those liens and the under *375 takings given by the Travelers Indemnity Company to discharge them. The ground of the application is that the time, pursuant to section 19 of the Lien Law, within which to bring an action to foreclose the liens or to obtain an order of extension has expired.
The facts presented are as follows: The petitioner, Lycee Francais de New York, is an educational corporation chartered by the New York Board of Regents. In September, 1957 it entered into a contract with Elco Construction Corporation for the building of an addition to its school on certain premises owned by it at No. 5 East 95th Street, New York City. On July 11, 1958 the respondent Calagna, asserting that he had a claim against Elco in the sum of $32,994.59 for work, labor and services rendered in that project, filed a notice of mechanic’s lien, naming Lycee Francais de New York as the owner of the property affected, giving 22 East 60th Street, New York City, as the owner’s address, and describing the location of the subject property as 5 East 95th Street, New York City. The petitioner’s address was not at the place specified (its correct address is 5 East 95th Street, New York City), but the notice of lien gave the correct address for the property on which the work was done. On September 12, 1958 the respondent Siegel filed a mechanic’s lien in the very same manner for the sum of $2,000.
On October 9, 1958 the respondent Calagna instituted an action in this court to foreclose his lien. In the summons and complaint in that action, he named as defendants, in addition to others, Charles de Ferry de Fontnouvelle, Jean de Sieyes and Pierre A. Bedard, whom he sued therein as doing business under the firm name and style of Lycee Francais de New York, and alleged that they were owners of premises 5 East 95th Street, the property against which, it will be recalled, the mechanic’s liens were asserted and filed. The other lienor, Siegel, was also named as a defendant in that action. A notice of pendency of the action was filed by the respondent Calagna which indicated, similarly, that Lycee Francais de New York was a copartnership, consisting of the three named individuals, de Fontnouvelle, de Sieyes and Bedard. On October 27, 1958 Bonaco Construction Co., Inc., a guarantor of the construction contract and a defendant in the foreclosure action, bonded the two mechanic’s liens, pursuant to the orders of this court, in the requisite amounts to discharge them. These bonds were issued by Travelers, and they are the bonds now sought to be cancelled of record. Thereafter Bonaco caused to be filed an undertaking in discharge of the lis pendens of the foreclosure *376 action. On February 20, 1959 the respondent Siegel interposed an answer in the foreclosure action and set up a counterclaim against the other defendants for foreclosure of his mechanic’s lien. In his counterclaim, Siegel made the identical allegations regarding the ownership of the subject premises, namely, that de Fontnouvelle, de Sieyes and Bedard were the owners thereof as a copartnership doing business under the name of Lycee Francais de New York.
On April 23, 1959 the defendant de Sieyes moved for summary judgment to dismiss the Calagna complaint in the foreclosure action and the Siegel counterclaim therein, on the ground that (as would appear from the deeds on file in the office of the Register of New York County) Lycee Francais de New York, a corporation- — and not the three named individuals — is and was the owner of the real property affected. The respondent Calagna countered by bringing on a cross motion to amend his notice of lien and his notice of pendency of action nunc pro tunc so as to designate Lycee Francais de New York, a corporation, as the owner of the premises. The defendant de Sieyes opposed the cross motion on jurisdictional and procedural grounds and on the merits, claiming that the notice of lien was defective and that it could not be amended. The court granted the motion for summary judgment dismissing the complaint and counterclaim against the individual defendants de Fontnouvelle, de Sieyes and Bedard and denied, without prejudice, the application to amend. It does not appear that either the notices of lien or the notice of pendency was ever amended. Thereafter, and on July 13, 1959, the respondent Calagna, as plaintiff therein, obtained an order of the court permitting the discontinuance of the foreclosure action without prejudice.
The petitioner contends that the mechanic’s liens filed by the respondents are jurisdictionally defective because they fail to state the true name of the owner of the property against which the liens are claimed, and that, as the respondent Siegel did not commence a foreclosure action or file a notice of pendency of action within one year after his notice of lien was filed, his lien, if valid ab initio, has lapsed. Contrariwise, the respondents contend that the notices of liens are valid in that 1 ‘ Lycee Francais de New York ”, in so many words, was named as the owner; and that if, from the process and pleading in the subsequent foreclosure action, the owner was mistakenly described as a partnership of three individuals doing business as “ Lycee Francais de New York”, the notices as filed nevertheless constitute sufficient notice to the owner. Secondly, it is contended *377 by them that, in pursuance of section 17 of the Lien Law (which provides that a lien may be continued for a period of one year by order of the court), Calagna on June 29, 1959 duly obtained an ex parte order continuing his lien accordingly, and that, on September 8, 1959, after this order was granted, he commenced a new foreclosure action naming as the defendants therein the petitioner, the respondent Siegel as a lienor, and others. Further, it is asserted that, in this new action, Siegel has already been served with the summons and complaint and that process has been issued for service on the other defendants. It is, therefore, contended that Siegel’s lien was continued by the commencement of this last action.
In response thereto, the petitioner asserts that it ascertained for the first time after bringing this present application that the respondent Calagna had obtained the ex parte order from this court continuing his lien, or that Calagna had commenced a new action in foreclosure. Moreover, the petitioner contends that the continuation of the Calagna lien by the ex parte order of the court was ineffective to keep the lien alive, as the lien filed originally was jurisdictionally defective. In addition, it asserts that it has not been served with process in the new foreclosure action, and that it does not appear that any of the defendants therein (with the possible exception of Siegel) has been served with the summons and complaint in such second action, or with any answer that might have been interposed by Siegel. Nor, as pointed out by the petitioner, does it appear that Calagna or Siegel had ever filed a notice of pendency of the new action.
The first question that must be considered is whether or not the notices of lien were valid. The filing of the notice is the act that creates the lien. There is no lien prior to notice. The Lien Law provides specifically, and in mandatory terms, for the contents of the notice (§ 9). The lienor must comply substantially with all of the requirements of the statute in filing the notice, and, if there is not such compliance, no lien is acquired (Lane & Son v. County of Westchester, 248 N. Y. 298). And, conversely, a substantial compliance is sufficient to invest liens with validity (Fyfe v. Sound Development Co., 235 N. Y. 266).
Notice is required for the purpose, among other things, of giving information to the owner so that he may, upon inquiry, ascertain whether or not the material has been actually furnished and the services have been actually rendered, and the value thereof (Toop v. Smith, 181 N. Y. 283). In reference to the naming of the owner of the subject property, the statute, in *378 its express language, seems quite sensitive to the possibilities of error and lack of information. Accordingly, it is provided that “ [a] failure to state the name of the true owner or contractor, or a misdescription of the true owner, shall not affect the validity of the lien ” (Lien Law, § 9, subd. 7), and that the interest of the owner need be stated only ‘ ‘ as far as known to the lienor ” (§ 9, subd. 2; see, also, Abelman v. Myer, 122 App. Div. 470).
This is not to say that every mistaken attempt, however honest and sincere, to name the owner is sufficient, or that misdescriptions will in all cases be treated lightly (De Klyn v. Gould, 165 N. Y. 282). There are a number of cases where a misdescription of the owner has been fatal- to the validity of the lien. For example, in Murtha v. Murphy (12 Misc 2d 199) the property was owned by defendant Margaret D. Murphy; her husband’s name was Robert. Inadvertently the name of Vincent Murphy was placed in the notice of lien instead of that of the defendant or of her husband. The lien was held ineffectual because there was no reference therein to construction transactions involving Robert Murphy or any indication that he had a legal interest in the property. In Cohn v. Gersh Realty Corp. (137 Misc. 245, affd. 233 App. Div. 795) the notice of lien stated that a stockholder was the owner of the property in question and that the contract was made with him personally. Since the land was owned by the corporation, this was held to be a fatal error. The use of a stockholder’s name, without the corporate name, was deemed more than a mere misdescription, since the stockholder had no title or interest in the corporation’s real property (cf. Matter of Hotel Esplanade v. Herman, 21 Misc 2d 1030). In Gates & Co. v. National Fair & Exposition Assn. (225 N. Y. 142) it was held, as the present petitioner points out, that there was not substantial compliance with the statute where a lien was filed against an officer and stockholder of the involved corporation, and the individual, although actively connected with the management, had no personal interest in the company’s real property as an owner. On the other hand, it has been held that a notice giving alternate names would be valid, as one of the names could later be rejected as surplusage (Abelman v. Myer, 122 App. Div. 470, supra). Coming back to the Gates case, it should be stated that there were several liens involved, and it is important to differentiate the respective holdings of the court as to each of them. A brief recitation of the facts in that respect will enable us to understand better the court’s ruling on the other liens. The app el *379 lant was incorporated by the name of “ Empire City Trotting Club ’ Some years later, the name was changed to ‘ ‘ Empire City Racing Association”, under which name it continued to operate. A large parcel of real estate was conveyed to the Empire City Trotting Club before it changed its name. A lien as filed contained the organization’s name as it appeared before the change. The court held that the name of the owner as given in this lien, although defective, was not a substantial ‘ ‘ misdescription of the true owner ”. One reading the notice could readily recognize and comprehend the party to whom it was directed, and no one was misled by the error.
The Clerk is required to enter in the lien docket kept by him for such purpose the names of the owners stated in the notices in alphabetical order. If the name stated in the notice and so entered gives to the public substantially the same information as the actual name would, or puts a searcher of the docket on guard, the notice of lien is not, in my opinion, jurisdictionally defective (Gates & Co. v. National Fair & Exposition Assn., 225 N. Y. 142, supra). Since the general purpose of the filing of the notice of lien is to supply data to interested parties, that portion of the notice having to do with naming the owner is, in my view, sufficient if it fulfills that purpose vis-a-vis the owner and those interested in his title. The notice of lien, as docketed in the case at bar, named as owner “Lycee Francais de New York”. Admittedly, this was the name of the true owner, although it was not described therein as a corporation. That, in the subsequent suit seeking to foreclose the lien, title was incorrectly stated to be in three named individuals doing business under an assumed name similar to the corporate title does not, I hold, affect the validity of the notice of lien as filed.
The petitioner also argues that there is jurisdictional invalidity because an incorrect address for the owner was given in the notice. The fact relied upon is stated correctly by the petitioner, but its conclusion therefrom is erroneous. That the address thus given did not mislead the petitioner, is shown, inter alia, by the acts of de Sieyes, a trustee of the petitioner, in contesting the prior proceedings. Although he did so in his individual capacity, there was undenied corporate knowledge of the filing of the notices of lien. The statute (Lien Law, § 9) requires only that the name of the owner of the real property, against whose interest therein the lien is claimed, be stated in the notice. It is silent as to whether the owner’s address must be stated. Subdivision 7 requires the notice of lien to state the property subject to the lien, with a description thereof sufficient *380 for identification, and this was fully complied with by the respondents. The test often applied in disregarding nonjurisdictional errors is whether there was any prejudice to a substantial right of the adverse party (cf. Civ. Prac. Act, § 105). I find no such prejudice here.
In sum, I hold that the notices of lien filed by the respondents Calagna and Siegel were not void ab initio.
The second question to be decided is whether or not the ex parte order obtained on June 29,1959, by respondent Calagna, continuing the lien for one year, was valid. Section 17 of the Lien Law provides, among other things, that a lien may be continued for successive periods of not more than one year each from the date of the filing of the notice of lien. This order may be granted “ by a court of record or a judge or justice thereof, continuing such lien, and such lien shall be redocketed as of the date of granting such order and a statement made that such lien is continued by virtue of such order ”. The statute does not require notice. Whether or not the order is to be granted is discretionary with the court and will depend upon the rights of the parties to be affected or preserved (Matter of Gould Coupler Co., 79 Hun 206). Accordingly, I hold that the order continuing the respondent Calagna’s lien until June 29, 1960, is valid, and that, therefore, that lien is still in force and effect.
The next question to be considered is whether the notice of lien of the respondent Siegel (being valid as of the time of filing upon the same basis that the Calagna lien was upheld by me) is still in effect, or whether it has spent its force because of the lapse of time. That issue brings into play other provisions of section 17 of the Lien Law, which I now quote: “No lien specified in this article shall be a lien for a longer period than one year after the notice of lien has been filed, unless within that time [as one alternative] an action is commenced to foreclose the lien, and a notice of the pendency of such action * * * is filed * * *. If a lienor is made a party defendant in an action to enforce another lien, and the plaintiff or such defendant has filed a notice of the pendency of the action within the time prescribed in this section, the lien of such defendant is thereby continued. Such action shall be deemed an action to enforce the lien of such defendant lienor.”
It will be recalled that, on October 9, 1958 — within the year of the filing of his notice of lien — the respondent Calagna had instituted a foreclosure action and filed a notice of pendency thereof, in which the respondent Siegel, among others, was *381 named a defendant, and that Siegel had interposed a counterclaim therein seeking to foreclose his lien. Under such circumstances — were that all — it would seem clear that the suit instituted by the respondent Calagna, and the filing of a notice of pendency thereof, should be deemed, as well, ‘ ‘ an action to enforce the lien ’ ’ of the respondent Siegel, and that ‘1 the lien of such defendant is thereby continued ’ ’.
However, it will also be recalled that — on motion by one of the individuals named in the foreclosure action as owners — the Calagna complaint and the Siegel counterclaim were both dismissed, and that thereafter, on July 13, 1959, the action was discontinued by court order. The issue is therefore presented as to what effect, if any, the dismissal of the counterclaim and the discontinuance of the action have upon the status of the Siegel lien. There appear to be no precedents in point — that is to say, none has been cited and I have been unable to find any. It would seem that section 17 envisages the institution of an action that is not withdrawn, at least to the extent that if the action is discontinued, its mere commencement does not result in the continuance of the defendant’s lien beyond the date of the discontinuance of the action. Putting it another way, it would seem that the termination of the suit in the fashion in which that litigation was concluded terminates the continuance of the Siegel lien as of the date of the discontinuance of the action, July 13, 1959. I so hold.
But — in order to make the picture complete on this phase of the case — it should again be noted that, prior thereto, by order dated June 29, 1959, the Calagna lien was continued, and that, on September 8, 1959, Calagna commenced a new foreclosure action (although it does not appear that he filed a notice of pendency thereof), again naming Siegel as a defendant and this time correctly naming the petitioner corporation as the owner of the property involved. It is claimed by the respondents that Siegel has been served with process in that action; it does not appear that he has yet served an answer. It is conceded that the petitioner has not — at least, as yet — been served with process in this second foreclosure suit. Indeed, it does not appear that the petitioner was aware of the order of extension of the Calagna lien or of the commencement by him of the second foreclosure action until the receipt of the answering affidavits on this motion.
In Martin v. de Coppet (64 Misc. 385) it was held that, where another lienor is made a party defendant in a foreclosure suit *382 by one lienor, and served with process, such defendant’s lien is continued although process is not served upon the other defendants within one year (cf. Davidson v. Bellows, 254 App. Div. 703). But it seems to me that, in order for a defendant’s lien to come under the protective umbrella of another’s foreclosure action, as provided in section 17 of the Lien Law, the defendant’s lien must, at the time of the commencement of the suit, be valid and in force. That is not the situation here, for it appears from the facts presented in this case (and I have hereinbefore held) that, before September 8, 1959, when the second Calagna suit was instituted, the Siegel lien had already expired by virtue of the discontinuance of the first Calagna action on July 13, 1959. The order of June 29, 1959, continuing the Calagna lien, did not have the effect of prolonging the life of the Siegel lien — and there is no proof of any order of extension to support a claim of such continuance. Nor does it appear to have been revived by the filing of another notice or by any court order or proceedings (1899 Atty. Gen. 210, 211; cf. Brockhurst Co. v. City of Yonkers, 270 N. Y. 459, 464, motion for reargument denied 271 N. Y. 635).
The problem remains as to whether the court has -the power in this proceeding and on this application to vacate the Siegel notice of lien and the undertaking given to discharge it. Section 19 of the Lien Law provides that a lien may be discharged in several ways. Presently pertinent among these is the “ failure to begin an action to foreclose such lien or to secure an order continuing it, within one year from the time of filing the notice of lien, unless an action be begun within the same period to foreclose a mortgage or another mechanic’s lien upon the same property or any part thereof and a notice of pendency of such action is filed according to law” (subd. [2]). I am aware that it has been held that this section is self-operative and that a mechanic’s lien which has expired by force of its provisions is not required to be cancelled by court order (Triple Cities Constr. Co. v. Dan-Bar Contr. Co., 285 App. Div. 299, order resettled 285 App. Div. 992, affd. 309 N. Y. 665). But I do not equate what is “ not required ” with what is “ impermissible ’ ’. It seems to me that the owner of real property should not be required to suffer to remain of record a lien which has no legal force and, therefore, cannot be foreclosed (cf. Lien Law, § 59). He should, I think, be able, in a proper case, and where the facts are not in dispute, to obtain a summary order of the court to vacate or cancel such lien of record and thus remove the semblance of a cloud upon his title (Matter of Pen *383 nington, 129 N. Y. S. 2d 360). In my view, this is a proper case for such relief. (Cf. Matter of Supreme Plumbing Co. v. Seadco Bldg. Corp., 224 App. Div. 844.) Accordingly, the motion to vacate the Siegel lien and to cancel the undertaking in respect thereof is granted.