C. WILSON'S PLUMBING SHOP ON WHEELS, INC., Plaintiff, v. TRUS-TEES OF DARTMOUTH COLLEGE, and Others, Defendants.

Supreme Court, Erie County, June 1, 1938.

*Elton M. Dale,* for the plaintiff.

*Herbert F. J. Norton,* and *Francis DiBartolo,* for the trustees of Dartmouth College.

*A. Jacob Silverberg,* for the defendant Henry Stern.

HARRY L. TAYLOR, Official Referee: Plaintiff and defendant Stern have furnished material and performed labor in and about renewing and repairing the plumbing in the Markeen Hotel in Buffalo of which the Trustees of Dartmouth College are the owners. Plaintiff makes no personal claim against the owners of the building. The building has always been distinctively a structure intended to be used for hotel purposes and the work and labor involved in this action brought about " improvement " of the realty within the contemplation of section 3 of the Lien Law. I find from the testimony that the materials and labor which actually went into the renewing of the plumbing — including the paints, etc., furnished by defendant, Henry Stern, to defendants Gildersleeve and Pizzolanti — were all furnished upon the order of defendant LaVoie, the lessee from the owners. Finding this and construing the lease as I do, the sub-leasing of the premises by LaVoie even though it were in violation of the terms of his lease, is immaterial so far as the rights of this plaintiff against the owners are concerned. The mooted question before me is whether or not the owners consented (Lien Law, § 3) to the furnishing of the materials and the performance of the labor for its tenant LaVoie.

It is recited in the lease to LaVoie that " the tenant agrees to rent the property as is and to install at once a new heating plant * * *. Also to renew what plumbing may be necessary * * * at his own expense and pay for the same, holding the landlord harmless for the same, which improvements shall become part of the buildings and become the property of the landlord in case the

tenant does not avail himself of the option to purchase." It is further stated in the lease that "the tenant agrees to make no structural changes in the buildings without the written consent of the landlord and will give written notice of all substantial improvements to be made to said buildings." And in paragraph 3 of the lease is this recital: "In the event of the violation by the tenant of any covenant, agreement or condition contained in this lease, then in either case the landlord shall have the right at the landlord's election to terminate this lease." It is to be borne in mind that this work was the renovating of a hotel property in order that it might better attract and serve patrons and that the heating plant was to be installed "at once." I think that it is fairly within the intendment of the following words "also to renew what plumbing may be necessary, etc.," that this work also was to be done at once, that is, that the "necessary renewing" of plumbing was of pressing importance. Plaintiff relies upon these portions of the lease and upon the character of the work done as furnishing sufficient evidence that the owners consented to the doing of the work. I have examined many cases bearing upon the point involved, e.g., *Jones* v. *Menke,* 168 N. Y. 61; *Tinsley* v. *Smith,* 115 A. D. 708, affd., 194 N. Y. 581; *National Wall Paper Co.* v. *Sire,* 163 N. Y. 122; *De Klyn* v. *Gould,* 165 N. Y. 282; *McNulty Bros.* v. *Offerman,* 221 N. Y. 98; *Boyle* v. *Paolini Cafeteria & Resturant, Inc.* 220 App. Div. 482; *Schuldt* v. *Chuckrow,* 222 id. 441; *Jewett Refrigerator Co.* v. *Lawless,* 120 Misc. 443.

The consent contemplated by section 3 cannot be found simply from a general agreement by an owner that a tenant may at his own expense make alterations for his own convenience in a building occupied by him — nor merely from an owner's passive acquiescence in the making of improvements. But "consent" may be found when the owner is an affirmative factor in procuring specific improvements to be made which benefit his property or, when being in possession and control, the owner assents to improvements expecting to reap benefits from them. Here the owners did not have possession or control. Were they an "affirmative factor" in bringing about the particular improvement? In a nutshell, the question here is did the owners merely allow the tenant to make repairs or replacements for his own benefit or did they "authorize" or "require" the doing of the particular work for the benefit of their property?

The upkeep of the plumbing is an important essential in running a hotel and this, as stated, is a hotel property. The tenant in this lease not only agreed to rent the property for hotel purposes "as is" and to "install at once a new heating plant" but "to renew

what plumbing may be necessary." This statement, taken with the context, fairly implies not only knowledge in the owners that such renewing was immediately necessary but implies a requirement that it be brought about. Then, while the tenant was obligated under the lease to pay for all this and to hold the landlords harmless, it was covenanted that all these improvements should become part of the buildings and become the property of the landlords, showing that the improvements inured to the benefit of the owners. A different situation is found, for example, in *Rice* v. *Culver*, 172 N. Y. 60. It is to be observed that these special provisions of the lease are in addition to the usual covenant in such leases (see next to last sentence of paragraph 7) that the " tenant agrees to maintain the building and equipment, to promptly make repairs when needed and to promptly pay cost of same." Furthermore, it was agreed in the lease that written consent of the landlords was required as to all structural changes, a requirement not made applicable to the installation of the heating plant or the renewing of necessary plumbing. Finally, the violation by the tenant of any of these covenants gave the landlords the right to terminate the lease. The landlords did not give the lessee free hand to do anything he pleased regardless of the properties or the financial consequences to the landlords; but it has not been even intimated that this plumbing " renewing " which was done was in any respect unnecessary. No protest has ever been made by the owners at any time and they have knowingly taken the benefit of the necessary improvement of their property. The " necessary " work to be done by the tenant in repairing the plumbing was specified in no more general terms than those mentioned in the lease in *Jones* v. *Menke*, 168 N. Y. 613. By the way, the last two cases cited hereinbefore by me I find to be of no assistance to the defendant owners. In the *Schuldt* case, the improvement was held to have been for the benefit of the tenant and the reversal rested largely upon an error in rejecting testimony at the trial. In the *Jewett Refrigerator Co.* case, the lease called for written approval by the owner of all the alterations (no such approval having been obtained) and the work done and material furnished resulted in trade fixtures and did not and were not intended to add to the value of the real property. The opinion in *Sager* v. *Renwick Park & Traffic Assn.*, 172 A. D. 359, is relied on by counsel for the owners. This case dealt with the claim of a sub-lessee-mechanic's lienor against an owner of realty, the claim being *for improvements not contemplated by the lease between the owner and the lessee* and the lease being relied on as indicating consent in the owner. Justice WOODWARD says in his opinion that no lien can be created upon the interest of any owner " except when he has entered into a contract, either express or implied, to pay for

the work and labor." For that statement of the law, the court relies upon *Knapp* v. *Brown*, 45 N. Y. 207. But that case involved a statute of 1863 under which a mechanic's lien could not be attached to an owner's realty except in conformity with the terms of a *contract with or employment by* the owner or in accordance with the *directions of the owner*. Even though it does not appear that the plaintiff was aware of the provisions in the lease or even though the plaintiff knew that LaVoie was not the owner of the hotel property, the particular work done was exactly that which the lease specified and the fact that the owners did not know just who was to do or did do the work is immaterial. There was a covenant by the tenant with the owners to *put* as well as to *keep* the premises in good repair and this carried with it the landlords' consent that the necessary renewing of the plumbing be brought about (*Tinsley* v. *Smith*, 115 A. D. 708 and cases cited at p. 710; affd. 194 N. Y. 581). " The landlord was in a position to force the tenant, even against his will, to make the necessary repairs " (*Barth* v. *Schmitz*, 103 Misc. 267, 70).

The opinion in *Jones* v. *Menke, supra*, supplemented by the other cases above cited by me, seems to state the principle applicable. After all, the validity of a mechanic's lien does not have to depend upon the ordering of the work by the owner as some of the earlier cases held. " Consent " is sufficient under appropriate attendant circumstances and such circumstances seem to me to have existed in the instant case. While the statement in section 23 of the Lien Law that the law is to be construed liberally to secure the beneficial interests and purposes thereof is not intended to furnish excuse for failure to substantially comply with the statute — still, one of the main purposes of the act is to provide those who furnish labor and materials for the benefit of real estate with security for the collection of amounts due for making such improvements to the realty. And when, as here, the improvement was clearly for the benefit of the hotel building itself and was not only contemplated but directly authorized, it would seem that any necessary liberal construction should be resorted to for the benefit of these claimants.

I find that plaintiff should have a lien against the premises in question for $756.61 with interest from September 4, 1937 and defendant Stern a like lien for $84.60 with interest from September 9, 1937, said liens to be on a parity (Lien Law, § 13). If at any later time it may be deemed advisable plaintiff or defendant Stern may apply for a money judgment, the one against defendant LaVoie and the other against defendants Gildersleeve and Pizzolanti for the amounts due from each.

I grant a full bill of costs to plaintiff and a trial fee of $30.00 to defendant, Henry Stern, against the owners.