Isidob Wassebvogel,
Spec. Eef. Plaintiff, together with other cross-complaining lienors, seeks in this consolidated action to foreclose mechanics’ liens filed by them against the interests of Shelton Hotel Associates, the defendant owner of the fee, Shelton 525 Lexington Corp., the defendant sublessee in possession, and S. T. Hotel Corp., the owner of the sublease at the time of the commencement of this action.
On or about March 27,1953 defendants Wien, Helmsley, Lane and Purcell, doing business as Shelton Hotel Associates, purchased the fee of the Hotel Shelton, located at 49th Street and Madison Avenue, City and State of New York, subject to a 21-year lease expiring on July 30, 1972. On June 12, 1957, as a result of various mesne assignments, Shelton Building Company became the owner of said lease and immediately made a sublease of the Hotel Shelton to Shelton Towers Corporation. Thereafter, in or about June, 1958, Shelton Towers Corporation assigned the sublease to defendant Shelton 525 Lexington Corporation (hereinafter referred to as “ Shelton 525 ”). Defendant S. T. Hotel Corp. took possession of this sublease by an assignment in the latter part of January, 1959, after Shelton 525 was in default.
At all times here involved (June 28,1958 to January 20,1959), defendant Shelton 525 actually occupied, operated and managed the Hotel Shelton. During such occupancy and management, Shelton 525 ordered certain plumbing, electrical and elevator repairs and supplies, as well as paints and painting, lumber and roofing and other various miscellaneous items required for the proper operation of the hotel. Shelton 525 then failed to pay the bills submitted by the lienors for many of these services and materials, which ultimately resulted in the commencement of foreclosure proceedings.
Most of the statutory requirements of the Lien Law regarding notice and filing of liens have been conceded or are established by the proof adduced upon the trial. The lienors in this action are proceeding under section 3 of the Lien Law which *928 provides, insofar as is here relevant, as follows: “ A contractor, subcontractor, laborer, materialman * * * who performs labor or furnishes materials for the improvement of real property with the consent or at the request of the owner thereof, or of his agent * * * shall have a lien * * * upon the real property ”. (Emphasis added.)
The credible testimony and documentary evidence establish that all of the services and materials here involved were ordered by Shelton 525; that when confirmation of an order was required, it was given by an officer or employee of Shelton 525; and that when a claim for moneys was paid or compromised, it was done by duly authorized personnel of Shelton 525. The record also establishes that the lienors’ notices of lien were duly filed and that the subject supplies and services were ordered from the lienors by authorized personnel of Shelton 525. It also appears that at the times such supplies or services were furnished by the various lienors, the major lease as well as the sublease of the subject premises were matters of public record, duly filed and recorded in the office of the Eegister of the City of New York, New York County.
In the opinion of the court, the foregoing facts are sufficient to render defendant Shelton 525 liable in this action. There remains to be determined, therefore, the issue of whether either of the remaining principal defendants, Shelton Hotel Associates or S. T. Hotel Corp., “ consented,” as a matter of law, to the services and supplies ordered by Shelton 525, the sublessee in possession, within the intendment of section 3 of the Lien Law (supra).
It is the contention of the lienors that the terms of the major lease and the subsequent sublease thereunder gave Shelton 525 the authority to make improvements, repairs and alterations. By virtue of these provisions, the lienors contend that the owners of the fee and their successors in interest expressly or impliedly “consented” to the furnishing of the services and materials ordered by Shelton 525, within the meaning and intent of the applicable statute (supra).
An analysis of the record adduced upon the trial clearly shows that there was no express request for repairs, labor or materials made of any of the lienors by any defendant other than Shelton 525. It is necessary, therefore, to examine the major lease and the sublease to determine whether any of their relevant provisions can reasonably be construed to indicate an implied consent by any of the other defendants for the services and materials supplied to Shelton 525.
*929 It should be noted, first, however, that there is a clear distinction between the “ consent ” as set forth in section 3 of the Lien Law (supra) and the mere passive acquiescence of an owner who has knowledge that repairs or improvements are being made by a lessee or sublessee, but does nothing about it. To come within the intendment of the statute, the owner must either by an affirmative factor in procuring such work, or, having possession and control of the premises, assent to the improvements in the expectation that he will reap their benefit. (Rice v. Culver, 172 N. Y. 60, 65, 66; Bedford Lake Park Corp. v. Twelve Linden Corp., 8 A D 2d 818; Ausable Chasm Co. v. Hotel Ausable Chasm & Country Club, 263 App. Div. 486.)
In the case at bar, under the terms of the major lease and the sublease, none of the defendants had any power to prohibit or to curb the repairs and services which the subtenant Shelton 525 ordered from the lienors. The major lease of the premises, under which the sublease was subsequently granted to Shelton 525, provides as follows with respect to repairs:
8. Tenant shall and will throughout the demised term, at Tenant’s sole cost and expense, take good care of the demised premises, fixtures, appurtenance and personal property, and make all repairs, inside and outside, ordinary and extraordinary, structural or otherwise (but excluding only structural repairs to exterior walls and retaining walls and foundations), necessary for the maintenance, operation, safety and preservation of the building on the demised premises and the goods, chattels, fixtures and equipment hereby leased; and Tenant shall and will, at Tenant’s own cost and expense, keep in reasonably good repair the said building and the roof, sidewalk, curbs, window glass, and skylights thereof, and all electric, gas and water fixtures, and the sewer, steam, waste and gas pipes and drains and all other parts of said premises, appurtenances, fixtures, plumbing and equipment belonging to or used in connection with said demised premises, including the sidewalks and street gutters in front thereof, and at the end or other expiration of the term shall deliver up the demised premises, with the goods, chattels, fixtures and equipment and the appurtenances in good order and condition, reasonable wear and tear thereof excepted.
9. Tenant will not make any alterations, additions or improvements upon the demised premises without the Landlord’s prior written consent, which consent shall not be unreasonably withheld, and if such consent is granted to the Tenant, it shall be responsible for making such alterations, additions or improvements at its own cost and expense and shall carry workmen’s compensation and public liability insurance as the Landlord may require. All alterations, additions or improvements upon the demised premises made by either party, including all panelling, decorations, partitions, railings, mezzanine floors, galleries and the like, shall, unless Landlord elects otherwise, become the property of the Landlord and shall remain upon and he surrendered with the demised premises as a part thereof at the end of the term or sooner termination thereof. The alterations, additions or improvements referred to in this paragraph as requiring Landlord’s prior written consent, shall apply only to structural, or exterior alterations, additions or improvements, and Tenant may make nonstruetural *930 interior alterations, additions or improvements and increase the number of bathrooms and enlarge rooms, without consent.
The sublease contains a similar provision regarding the lessee’s obligation to make repairs. Paragraph 12 (b) thereof states:
12 (b) The lessee covenants at its own cost and expense to make any and all repairs or replacements, ordinary or extraordinary, structural or otherwise, inside or outside, seen or unforeseen, necessary to keep in good physical order and condition the building or buildings on the leased premises now standing, or hereafter erected, inside and outside, including but not limited to repairs to and replacements of walls, roofs, floors, ceilings, fire escapes, elevators, vaults, sidewalks, curbs, water and sewer connections, gas pipes, wires, or conduits for electricity, whether inside, in front of or appurtenant to the demised premises and the fixtures, goods, chattels, furniture, furnishings, and equipment hereby leased as well as replacements and additions thereto, (excepting only structural repairs to exterior walls and retaining walls and foundations), such repairs, replacements or additions to be at least equal in quality of materials and workmanship to the property theretofore used in the demised premises.
In addition to the foregoing provision of the sublease, paragraph 26 thereof provides as follows: ‘1 lessee agrees to expend annually for repairs, replacements and additions to the furniture, furnishings, fixtures and equipment in the demised premises the sum of at least $20,000 per year during the term of this lease.”
In the opinion of the court, the foregoing provisions of the major lease and sublease are just the usual covenants entered into between a lessor and a lessee for the repair and maintenance of demised premises. They cannot be deemed a basis of either an express or implied consent for the services and materials here involved. A mere general consent or requirement on the part of an owner that a lessee may or shall make alterations and repairs to the premises at his own expense does not constitute ‘ ‘ consent ” within the meaning of the Lien Law (Ætna Elevator Co. v. Deeves, 125 App. Div. 842, 843-844; Hankinson v. Vantine, 152 N. Y. 20, 31; Rice v. Culver, supra).
The provision of paragraph 26 of the sublease which relates to an annual expenditure of $20,000 to replenish various items of hotel “ inventory ” is not relevant to the type of repairs and services which were made and rendered by the lienors here. This provision refers only to articles of personal property and not to repairs and improvements of the real property such as is involved in this action. (See Sager v. Renwick Park & Traffic Assn., 172 App. Div. 359.)
Contrary to the contention of the lienors, an examination of the record adduced upon the trial fails to indicate any acts or conduct on the part of defendants Shelton Hotel Associates, *931 Shelton Towers Corp., or S. T. Hotel Corp. which can reasonably be construed as an “ implied consent ” within the intendment of the Lien Law. It is clearly evident here that the lienors dealt exclusively with employees and officers of Shelton 525. They extended credit to this corporation only, although it was a matter of public record available to each of them that Shelton 525 was not the owner of the premises involved and had merely a limited interest in the property. (See Hankinson v. Vantine, supra; Jewett Refrig. Co. v. Lawless, 120 Misc. 443.)
In post-trial briefs, lienors cited many cases dealing with permanent improvements to real property which reverted to the owner at the termination of the leases. In the instant action, however, none of the work performed by the lienors can be deemed to be in the nature of a permanent improvement or an addition to the fee. The repairs and services ordered by the Shelton 525 were those incidental to its normal use and operation of a hotel, such as boiler repairs, elevator and motor repairs, replacement of lighting fixtures and painting. It is obvious that these were “ operation and maintenance ” work which would undoubtedly be required periodically during the operation of a hotel. There is no proof before me which warrants the conclusion that the owner of the fee or any of the defendants other than Shelton 525 subsequently received the benefit of any of the repairs or services made or rendered by the lienors in this action.
Those cases relied upon by the lienors in which a ‘ ‘ consent ’ ’ within the Lien Law has been implied by the courts concern repairs or improvements for which an owner had specifically contracted or where the owner did some affirmative act respecting the particular property improvement. (See National Wall Paper Co. v. Sire, 163 N. Y. 122; Butler v. Flynn, 51 App. Div. 225; Tinsley v. Smith, 115 App. Div. 708; Wilson’s Plumbing Shop on Wheels v. Trustees of Dartmouth Coll., 168 Misc. 376.) Here, however, as above stated, the repairs made by the lienors were of a nature such as are frequently required in a hotel and there is nothing in the record from which it may be inferred that any of the defendants knew of, anticipated them or made the leases here involved with specific reference to such matters. (Ætna Elevator Co. v. Deeves, 125 App. Div. 842, 843-844, supra; Bedford Lake Corp. v. Twelve Linden Corp., supra; Valenti New York Theat. Co., 99 Misc. 517.)
Contrary to the contention of the lienors, there is nothing in the record which warrants the conclusion that any of the lienors communicated with any of the defendants other than Shelton 525 in order to secure their consent for the work performed upon the property. The testimony of the witness Bucher, an officer *932 of Shelton 525, that one or more partners of Shelton Building Company, the major tenant, visited the hotel while the repairs were in progress and knew of the work is not sufficient to establish a consent on the part of defendants. Mere knowledge that repairs and alterations are being made does not imply the consent set forth in the Lien Law, nor do expressions of satisfaction with such work, where, as here, these defendants exercised no control or supervision over the performance of the contracts entered into between the various lienors and Shelton 525. (Delany & Co. v. Duvoli, 278 N. Y. 328, 331; Valenti v. New York Theat. Co., supra; De Klyn v. Gould, 165 N. Y. 282, 286-287; Sager v. Renwick Park & Traffic Assn., supra.) Significantly, Shelton Building Company is not a party to this action and, in any event, there is no proof that this company was an agent or representative of the owner of the fee in any capacity as would make its acts or knowledge binding upon such owner.
The lienors, before entering into their contracts with Shelton 525, could have and should have ascertained the extent of this sublessee’s interest in the Hotel Shelton. Had they so investigated, section 9 of the sublease would have immediately put them on notice of some of the limitations of the rights of Shelton 525. This provision states:
9(a) Lessee shall not create or permit to be created or to remain, and shall discharge, any lien, encumbrance or charge (levied on account of any imposition or any mechanic’s, laborer’s or materialman’s lien or any mortgage, conditional sale, title retention agreement or chattel mortgage, or otherwise) which might be or become a lien, encumbrance or charge upon the demised premises or any part thereof or the income therefrom, except as provided in paragraph 43 below, and Lessor shall not suffer any other matter or thing whereby the estate, rights and interest of Lessor in the demised premises or any part thereof might be impaired.
# * e
9(e) Nothing in this lease contained shall be deemed or construed in any way as constituting the consent or request of Lessor, express or implied by inference or otherwise, to any contractor, sub-contractor, laborer or material-man for the performance of any labor or the furnishing of any materials for any specific improvement, alteration to or repair of the demised premises or any part thereof, and the personal property hereby leased, nor as giving' Lessee any right, power or authority to contract for or permit the rendering of any services or the furnishing of any materials that would give rise to the filing of any lien against the demised premises and the personal property hereby leased or any part thereof.
Thus, although Shelton 525 had a right to make the repairs and improvements ordered from the various lienors, it obviously was in no position, under the terms of its lease, to bind any of the other defendants by such acts. The “consent” contemplated by the statute is not the consent given to the tenant in a *933 lease but, in effect, is a consent given to the materialman. As noted in Jones v. Manning (53 Hun 631, opinion in 6 N. Y. S. 338, 340) and as succinctly stated in Sager v. Renwick Park & Traffic Assn. (supra, p. 368): “It is a holding out of the owner as acquiescing in the giving of credit which is at the foundation of the right to a lien against the owner of the fee, and where the contract is made with a tenant in possession under a lease having no connection whatever with the owner of the fee, it cannot reasonably be contended that the latter is either morally or legally bound to compensate the lienors.” (See, also, Delany & Co. v. Duvoli, supra; Garber v. Spivak, 65 Misc. 37, 38.) Here, there was no “holding out” or “ giving of credit” by the owner to the lienors, either by conduct or the express terms of the leases. The credible evidence clearly establishes, as already noted, that the lienors never dealt with the record owner, its agent or representative or with any of defendants other than Shelton 525. The uncontroverted proof demonstrates that the credit accorded by the lienors was to Shelton 525 onlg and not to the owner or any of the other defendants.
In the opinion of the court, therefore, there is no legitimate foundation for the assertion of a lien against the interests of any of the defendants other than Shelton 525. No express consent by any defendant other than Shelton 525 has been established here, nor can any implied consent, within the intendment of section 3 of the Lien Law, be imputed to any of the other defendants by the terms of the leases here involved or by the acts of any of their officers or employees.
Thus, it necessarily follows that any loss sustained here by the lienors was solely the result of their own negligence in checking the credit of Shelton 525 only and their failure to investigate the recorded leases which indicated the limited rights and interest of Shelton 525 in the property. Inasmuch as none of the other defendants against whom the lienors are proceeding here contributed in any way to such negligence or failure, the lienors ’ loss cannot be the basis, in equity or at law, or a right to impress or foreclose a lien against the property interests of these defendants.
Several of the lienors contend that the services performed by them were of an “ emergency” nature and that the property could not have functioned as a hotel without these necessary repairs. Such contention, even if accepted as a fact, is not sufficient to impose liability for the value of those services upon the owners of the property or any defendant other than Shelton 525. On the contrary, such contention merely emphasizes that these repairs and services were not “ improvements ”, remodel- *934 ling or long-range plans such as were present in the National Wall Paper Company v. Sire case and many of the other cases relied upon by the lienors (supra).
In any event, there is nothing in the applicable provisions of the Lien Law which grants a lien to a party who performs “ emergency ” repairs or services for a sublessee in possession. If a fee owner were to be charged with responsibility under the Lien Law for every temporary or eñiergency repair required in the operation of a hotel, there would be little reason or advantage for such owner to make a lease, inasmuch as his obligations would then be the same as his lessee’s or sublessee’s. Such is clearly not the intent of the Lien Law. Moreover, there is nothing in the major lease here which requires the tenant to maintain the premises as a hotel (see Lodato v. Alvin Estates, 16 Misc 2d 388), nor did the services rendered by the lienors here in any manner appreciably increase the owner’s reversionary interest in the property.
In several instances, it appears from the record that the lienors filed claims for items which, under the law, are not the proper subject matter of a lien. For example, lienor Davis & Warshaw, Inc., filed a lien in the amount of $2,501.58, which included charges for tools and toilet seats. These are not lien-able items. Accordingly, $377.92, the amount charged for such toilet seats and tools, is disallowed.
Similarly, $448.56, representing the charge for electric bulbs, sockets, soldering kits and extension wire, is disallowed from the claim filed by Tudor Electric Supply Co. (See Waring v. Burke Steel Co., 69 N. Y. S. 2d 399, 400.)
As to the Bern Contracting Co., the credible evidence establishes that the unpaid balance due it for all services rendered amounts to $7,913. There is nothing in the record which warrants the allowance of its claim for $11,978.60. Its lien, therefore, is reduced to the sum of $7,913.
Judgment is rendered in accordance with the foregoing in favor of plaintiff and other cross-complaining lienors against Shelton 525 Lexington Corporation only. Unless otherwise indicated herein, the liens filed by the various lienors are allowed to the extent set forth in their respective notices of lien. In all other respects, the complaint and cross complaints are dismissed upon the merits.
Submit decree within 10 days on 3 days’ notice. Such decree may provide for the release and discharge of any bonds furnished by the various defendants other than Shelton 525 Lexington Corporation.