Jack Stanislaw, J.
The trial of this action dealt with two causes of action, one to foreclose a mechanic’s lien and the other to recover money based upon a theory of unjust enrichment. The amount involved has been stipulated to be $30,000. The trial itself concentrated on the disputed existence of liability as against the contesting defendants. Other named defendants had previously defaulted. Actually involved here were two individuals (fee owners of the subject property), a partnership, and the receiver of the partnership. Forte, the plaintiff, agreed to perform certain contracting work at property known as Great River Country-Club. The ownership of that property the subject of the lien is, or was, highly involved and yet of greatest importance to any determination here.
It has been conceded by the parties, in effect, that the twv fee owners are at best only passively parties to the action. Their liability has not been seriously asserted either as regards the lien or unjust enrichment.
In January, 1962, Great River Country Club, Inc. (hereinafter “ the corporation ”) agreed to share its right to the operation of the club (existing by virtue of a lease from Great River Country Club Associates) with another group. Plaintiff agreed to renovate and do other work at the club in February of 1962. His agreement was made with one Sobel, president of the corporation and a rather ubiquitous fellow, as we shall see. Sobel consistently represented himself to Forte as an officer of the corporation, judging by the testimony and exhibits offered. However, Sobel had also been a general partner in a limited partnership known as Great River Country Club Associates (hereinafter “Associates”). The partnership was judicially dissolved December 16, 1961 and placed in the hands of the defendant Bess, as receiver. Then, in April, 1962, Associates became contract vendees of the club, property and all, and the corporation more or less ceased to be connected with this property in any visible manner. Of course, to the extent that Associates came into the picture at all in April of 1962 it was through Bess and not as a still wholly potent partnership. At any rate, Forte can be seen to fit, something of a “ lucky Pierre ”, between the corporation and Associates, both of which had one thing in common - — 'Sobel.
Sobel represents the key to Forte’s case, for the theory of the foreclosure of lien cause of action is essentially that knowledge acquired by Sobel acting as an officer of the corporation is *280 imputed and attributed to the partnership. If this were so then silence of Associates while plaintiff was working on the club would amount to an acquiescnce and consent with knowledge validating the lien. Did corporate officer — general partner Sobel have an awareness of Forte’s work in his partnership capacity sufficient to bind it? ' From January to April, 1962, the corporation was actively running the club (with others). The transfer of operating- rights was made by Associates to others, alone, in April, and Sobel’s name appears on documents used to effectuate this transaction. By this maneuver the corporation disappeared vis-a-vis the club. The strings pulled by Associates in the background here have resulted in the knot as to control we are dealing with now.
A lien will attach upon an improvement of real property made “ with the consent or at the request of the owner thereof ” (Lien Law § 3). A vendee in possession is considered an owner for thesfe purposes (Lien Law, § 2). Associates is involved generally and specifically under a lease-with-option-to-purchase arrangement, thereby an ‘ ‘ owner ’ ’ in the eyes of the statute. But just because Sobel had a corporate hat and a partnership hat does not ipso facto result in actionable partnership consent to work ordered by him as president of the corporation (cf. Sullivan v. O’Dea Realty Corp., 153 Misc. 634). At this point in the commercial development of our society it would be chaotic to propose the utilization of available forms by individuals only one at a time if they are otherwise not to be found interlocking and interdependent.
The court can only fall back upon the long since established criteria of consent to the improvement of realty purportedly given by implication (National Wall Paper Co. v. Sire, 163 N. Y. 122). These indicia can be pared down to a necessity for proof of a willingness for or acquiescence in improvements being made, without the owner’s objection. That proof, in this case, is directly based upon the status and actions of the hyperactive, many-faceted Mr. Sobel. Even assuming Sobel led a double life it must be remembered that plaintiff 'first dealt with him after the partnership had been dissolved. According to the Partnership Law (§§ 64, 66) dissolution terminates all authority of a partner to bind the partnership (except under certain circumstances not apparent here). The binding connection Forte would make to the partnership is not one flowing through a person in aulhority in both structures. If all semblance of Sobel’s partnership hat is removed or dissolved there remains only the bald assertion of a personal, indirect ability of his *281 to bind the partnership to the corporation’s transaction. Forte has not demonstrated any other connection with or to defendant Associates or its receiver sufficient to establish knowledge from which consent may be implied. So far as can be seen in this record Associates conceivably had as much awareness of Forte and the work' he was doing as Forte had of its existence; that is, practically none.
The acquiescence of an owner of realty to its improvement is patently insufficient to sustain a lien in the absence of an affirmative act or action on the part of that owner (Delany & Co. v. Duvoli, 278 N. Y. 328). There is no responsibility for mere silence, for an owner has no obligation to stop work by his own positive act (Cowen v. Paddock, 137 N. Y. 188) unless knowledge of the work is definitively established and the benefits thereafter received and retained (Husted v. Mathes, 77 N. Y. 388). Consent need not, of course, be contractual (Jenkin Contr. Co. v. Sixth Ave. & 57th St. Corp., 282 App. Div. 662), but it must be (even when implied) obvious and positive (Eisenson Elec. Serv. Co. v. Wien, 30 Misc 2d 926; Lorber v. Eskof Real Estate, 21 Misc 2d 308; Bedford Lake Park Corp. v. Twelve Linden Corp., 8 A D 2d 818; G & H Plumbing & Heating Co. v. Kew Mgt. Corp., 39 Misc 2d 483).
Even implying knowledge of Forte’s work through Sobel, and perhaps even Bess, the connection is far too tenuous to sustain constructive consent. It must be theorized that Associates accepted plaintiff’s work with prior awareness of it. Since there is no proven direct knowledge, whatever there was must have been secondhand. "With this in mind it can be observed that any implication to be made operates at three distinct levels: that Bess and/or Sobel bound the partnership, that the partnership then refrained from acting, and that the cumulative effect of these first two steps was equivalent to the partnership’s affirmative act resulting in its liability for the improvements the subject of the lien. As can be noted in the cases {supra) relating to implied consent, one step can be reasoned through by circumstantial inference, two such steps are rare but possible, but a third carries the situation beyond the outermost reaches of plaintiff’s theory and existing precedent.
In the alternative, Forte seeks to prevent an unjust enrichment of the partnership at his ($30,000) expense. There is no doubt that a benefit has been conferred upon the property. However, this approach is substantially affected by the valid written contract that existed between Forte and the corporation. And Associates’ lack of knowledge, as previously noted, resulted in *282 an inability on its part to have acted, in theory at least, in such ■a way as to be bound for payment by reason of an unjust enrichment. Even simple acquiescence, unaccompanied by positive permission, is insufficient. (Brigham v. Duany, 241 N. Y. 435.)
An actionable cause in unjust enrichment will not be found through a consent divined by mere inaction. The additive of an equitable principle, in the nature of an estoppel, emanates from an opinion dealing with a situation in which an affirmative declaration in the nature of a consent was involved (De Klyn v. Gould, 165 N. Y. 282). We have no such factor here, but rather an unsought benefit conferred, without evidence of equitable liability. To be sure, the partnership was enriched and plaintiff was not paid; thus, the former is better off at the latter’s expense. Although quite often an obligation will be stated in such circumstances in order to create an otherwise nonexistent contractual relationship, this may not be done every time where, and .simply because, there is an imbalance between benefits realized by parties. Any regular and predictable concept of that nature would be impractical and unworkable almost by definition (Miller v. Schloss, 218 N. Y. 400).
Furthermore, before a contract will be manufactured from circumstance there must be a minimal rational basis for doing so. It is permissible to receive and consider evidence not only of factors favoring the exercise of the court’s equitable discretion, but also of a contrary nature weighing against the establishment of the quasi-contractual relationship. Here, Forte performed pursuant to an express contract made with the corporation, and not because of a mistaken or excusable impression of any privity with these defendants now sought to be rendered liable for his performance. Thus, for example, one should pay for a steak eaten rather than for tea and toast actually ordered, but not for a steak someone else ordered and ate when he has not even been inside the restaurant — and in spite of the fact that he is famished.
There is an absence of proof tending to show how these defendants (Associates and Bess) could be said to have misled the plaintiff. The court cannot subscribe to the alternative theory of unjust enrichment on the evidence presented (cf. Tibbetts Contr. Corp. v. O & E Contr. Co., 21 A D 2d 915; Printup v. Printup, 20 A D 2d 964; Tager v. Mealy Ave. Realty Corp., 14 A D 2d 584). Not every enrichment of another without compensation is actionable. The phrase “ unjust enrichment ” cannot be read and understood in a purely colloquial sense after having been molded into a legal term of art by many years of interpretation and application. The plaintiff’s plight *283 is not one to be casually ignored, but neither are the extensive ramifications of a wholly emotional or sympathetic reaction without solid legal foundation. The court’s sympathy does go out to this plaintiff, but its decision must go to these defendants. The complaint is dismissed.